G. C. CATHEY v. F. B. WEAVER ET AL.

No. 3146. Decided May 24, 1922.

(242 S. W., 447.)

1.—Vendor's Lien Retained—Limitation—Superior Title—Statutes—Case Stated.

Reviewing the state of the law prior to 1905 governing the remedies of the vendor retaining an express lien for unpaid purchase money, and the provisions and constitutionality of subsequent statutes in regard to limitation of such remedies (Act of April 17, 1905, Laws, 29th Leg., ch. 138, p. 334; Revised Statutes, 1911, arts. 5693, 5694, 5695; Act of April 3, 1913, Laws, 33d Leg., ch. 123, p. 250; Act of August, 1913, Laws, 33d Leg., 1st Called

Session, ch. 27, p. 39) it is held that a vendor retaining the superior title (lien for purchase money reserved in deed) on a sale of land in 1907, securing purchase money due in October of that year, was barred of remedy for enforcement of same, either by foreclosure of his lien, or by suit to recover the land upon his superior title, on December 14, 1914, the date of his first attempted assertion of same by suit. (Pp. 519-527).

### 2.—Constitutional Law—Limitation—Statute—Existing Debts.

A statute of limitation applying to existing debts would be unconstitutional if it took away entirely a then existing remedy for their enforcement; but in such cases the courts, despite the statute, will give creditors coming within such arbitrary bar a reasonable time, to be determined by the court, in which to enforce their remedy. (Pp. 522, 527).

### 3.—Same.

Article 5694, Revised Statutes, as amended by the Act of April 3, 1913, which barred in four years an action to recover the land by the holder of the superior title (vendor's lien reserved in the deed) applied to past as well as to future contracts; but, by article 5695, holders of such previous obligations were given one year from its date in which to sue. (P. 523).

### 4.—Limitation—Statute—Lien—Superior Title.

Article 5695, Revised Statutes, as amended by the Acts of 1913, in providing that owners of notes secured by liens executed subsequent to July 14, 1905, and barred by four years limitation on June 30, 1913, should have four years within which to bring suit to enforce the lien, did not apply to nor extend the time for bringing suit by them as holders of the superior title to recover the land. That was covered by the subsequent clause giving them 12 months after the Act took effect; and this is to be taken as denying them any other remedy. (Pp. 524-527).

### 5.—Limitation—Constitutional Law—Statute Construed.

The Legislature could not constitutionally extend the time for suits to enforce liens already barred by limitation and as to which a vested right to a defense had already attached. The statute attempting to do so (Rev. Stats., 1911, art. 5695, as amended in 1913) could not be construed as applying only to liens secured by deeds of trust or vendors, liens reserved, even though it should be held that as to them it was competent to extend the time for enforcing the lien because they had not lost all remedy therefor. By its terms it is not confined to such cases. Neither is this a case where, without attempting judicial legislation, the valid and the invalid portion of this part of the statute may be separated by the courts and the former only sustained. (Pp. 526-528).

### 6.—Constitutional Law.

Limitation laws must not be discriminatory or arbitrary. A statute which arbitrarily discriminates between different lien holders without any proper basis for their classificaton and different treatment is beyond the power of the Legislature to enact. (Pp. 528, 529).

### 7.—Same.

The note and lien secured by reservation in vendor's deed being barred at the time of the amendment of art. 5695, Rev. Stats., by the Acts of 1913, there was by that statute no valid and constitutional extension of the time for a suit to foreclose it. And on the failure to bring suit for the recovery

of the land as holder of the superior title within the 12 months allowed by that Act the holder lost all right to an enforcement of his debt.  (Pp. 518-529).

### 8.—Foreclosure—Disposition of Surplus.

Where the right to the excess of the proceeds of land on foreclosure sale after payment of the debt etc. is contested, it was proper to direct its payment to the clerk of the court, to be held until necessary parties could be impleaded to determine its disposition.  (P. 529).

Error to the Court of Civil Appeals for the Third District in an appeal from Brown County.

Cathey, defendant in an action brought by Weaver for foreclosure of a deed of trust on land, was denied a recovery on his cross action to recover the land as superior owner, or to have foreclosure on his claim against the land by virtue of a vendor's lien reserved in his conveyance to a former owner, both remedies being held barred by limitation.  He appealed, and on affirmance (193 S. W., 490) obtained writ of error.

*Shropshire & House,* for plaintiff in error.

If the Statute of Limitation of this State had run to that degree of completion that plaintiff in error had no remedy for the enforcement of his rights against the land before the enactments of 1913, the Legislature of 1913 could not have revived those completely barred rights without violating the provision of our Constitution against retrospective laws; but so long as plaintiff in error had an adequate and complete right and cause of action left to him under the law at the time of the enactment of August, 1913, the Legislature had a right to amend or change the laws of limitation, and to change the form of remedy to be pursued by plaintiff in error, and allow him such additional time for pursuing that remedy as the legislative judgment saw fit.  Such action of the Legislature did not violate the provision of our Constitution against retrospective laws.  De Cordova v. Galveston, 4 Texas, 470; Sutherland v. DeLeon, 1 Texas, 250; Standifer v. Wilson, 93 Texas, 232; Johnson v. Taylor, 60 Texas, 362; Treasurer v. Wygall, 46 Texas, 457; Loan Assn. v. Hardy, 86 Texas, 610; 8 Cyc., 820-923; Power v. Telford, 60 Miss., 195.

If a part of an amendment or amendments of a statute be unconstitutional, and it is clear from the reading and history of the whole law pertaining to the subject that the Legislature would not have enacted the constitutional portions had it known the portions thereof to be unconstitutional, then it becomes the duty of the court to disregard the whole of said attempted amendments, and to give effect to the laws as they stood prior to said attempted amendments.

*Wilkinson & McGaugh,* for defendant in error.

The note declared upon by appellant Cathey being four years

past due on October 5th, 1911, the appellee Weaver became at that time vested with the right to plead the statute of limitation as a defense and bar to any suit brought to foreclose the lien retained or given to secure its payment; and the Legislature was thereafter without power to revive or restore the cause of action evidenced by said note, and to give any enforcible remedy for its payment. Taylor v. Duncan, Dallam, 514-518; Mellinger v. City of Houston, 68 Texas, 37-48; National Bank v. National Bank, 85 Texas, 560-562; Girdner v. Stephens, (1 Heisk. 280) 2 Am. Rep., 700-706; Yancy v. Yancy, (5 Heisk. 353) 13 Am. Rep., 5-11; Rockport v. Walden, (54 N. H. 167) 20 Am. Rep., 131-134; McCracken County v. Mercantile Trust Co., (84 Ky., 344) 1 S. W., 585-588; Board of Education v. Blodgett, (155 Ill., 441) 46 Am. St. Rep., 348-355; Lawrence v. Louisville, (96 Ky., 595) 49 Am. St. Rep., 309-315; Eingartner v. Illinois Steel Co., (103 Wis., 373) 74 Am. St. Rep., 871-877; Menzel v. Hinton, 95, Am. St. Rep., note d, 659-660; Ireland v. Mackintosh, (22 Utah, 296) 61 Pac. Rep., 901-904; Rhodes v. Cannon, (Ark.) 164 S. W., 752-755; 19 Am. & Eng. Enc. of Law (2nd Ed.) pp. 170-172; 8 Cyc. Law & Proc., pp. 922-923, 1012-1013; 25 Cyc. Law & Proc., 988.

If the objectionable part of a statute is separable from the rest in such away that it will be presumed that the Legislature would have enacted the valid portion, without the invalid portion, the statute should be enforced as to the parts that are constitutional. March v. State, 44 Texas, 80; T. & P. R'y. Co. v. Mahaffey, 98 Texas, 392-395; 36 Cyc. Law & Proc. pp. 976-978; State v. McFarland, (60 Wash., 98) 140 Am. St. Rep. & note, 909-915.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

In 1907 the plaintiff in error, G. C. Cathey, owned the land involved in this suit. On April 27th of that year he sold and conveyed it by deed to E. E. McClain. As a part of the consideration, McClain executed and delivered to Cathey a note, of even date with the deed, for the principal sum of $700.00, with interest from date until paid, due October 1, 1907. A vendor's lien was retained in both the deed and note in favor of Cathey, to secure the payment of the note. This note was never paid, and is still owned by Cathey. Cathey did not file suit on the note until his cross action was filed in this case on December 14, 1914, which was after his right to recover the land by virtue of the superior title had been barred by limitation under the amended act of the Legislature of 1913, and after the note had been barred in October, 1911. The land in controversy was bought from McClain by G. H. T. Dodson, who gave a deed of trust thereon to defendant in error, F. B. Weaver, to secure a note for the principal sum of $2160.75. This note and deed of trust were executed on February 13, 1911. The note became due November 1, 1914. On

December 2, 1914, the defendant in error filed his original petition in the District Court of Brown County against the necessary parties, including the plaintiff in error, G. C. Cathey, for recovery on this note and foreclosure of his lien on the land. On December 14, 1914, Cathey filed his answer, in which, among other things, he alleged that his vendor's lien reserved in the deed and note was superior to the lien of defendant in error. He prayed for foreclosure of the vendor's lien on the land in controversy, for sale thereunder, and that the amount of his note, interest and attorney's fees, be first satisfied before any part of the proceeds of the sale should be applied to the satisfaction of defendant in error's claim. In the alternative, he prayed for a decree to establish and fix his superior title to the land as a vendor thereof. Weaver's position and pleadings were to the effect that Cathey's note, his vendor's lien, and his right to recover the land by virtue of any superior title, were barred by limitation. Cathey's contention was that his right to foreclose his lien had been extended by the two legislative acts of 1913. Other issues were made, but this statement is sufficient for the purposes of this opinion.

The trial court held that Cathey's note, lien, and right of recovery by virtue of the superior title were barred by the statute of limitation, and rendered judgment foreclosing the deed of trust lien in favor of Weaver, ordered the land sold, the proceeds of the sale to be first applied to the liquidation of the judgment in favor of Weaver on the note sued upon, the balance, if any, to be paid to Bailey, a subsequent and the last vendee of the land.

Plaintiff in error carried the case to the Court of Civil Appeals, which held that Cathey's claims were barred, and affirmed the judgment of the trial court in favor of Weaver. The court, however, reformed that portion of the judgment which directed that the residue of the amount for which the land might be sold, after the liquidation of Weaver's judgment, be paid the subsequent vendee, Bailey, by ordering the same to be deposited with the clerk of the trial court, who was instructed to hold it for ten days, in order to give plaintiff in error, Cathey, time within which to file a plea impleading Bailey, and assert as against Bailey his claim to such residue. 193 S. W., 490.

It is to be observed that the deed of trust note held by Weaver was executed February 13, 1911, and that in October of that same year Cathey's vendor's lien note became barred by the four years statute of limitation.

The determination of the principal question at issue requires an examination of the legislative history of the statutes of limitation involved. Prior to July 14, 1905, vendor's lien notes and notes secured by deeds of trust or mortgages on real estate, with or without powers of sale, were barred by the statute of four years limitation. R. S., Art. 5688. Vendor's and other liens, being but incidents of the debts which they secured, became barred and unenforcible when

the debts were barred. Stone v. McGregor, 99 Texas, 51, 57, 87 S. W., 334; Hale v. Baker, 60 Texas, 217, 219; Rindge v. Oliphint, 62 Texas, 682, 685; Brown v. Cates, 99 Texas, 133, 136, 87 S. W., 1149; McKeen v. James, 23 S. W., 460, 465; Fuller v. O'Neal, 82 Texas, 417, 18 S. W., 479; Goldfrank v. Young, 64 Texas, 432.

However, where the owner of vendor's lien notes was at the same time holder of the superior title retained in the deed to secure the payment of the notes, or where the deed of trust or mortgage contained a power of sale, the holders of the notes were not without remedy.

If the holder of a vendor's lien note was at the same time the holder of the superior title, he could bring suit to recover the land by virtue of such superior title, although the note was barred by the four years statute of limitation. McPherson v. Johnson, 69 Texas, 484, 487, 6 S. W., 798; Stephens v. Mathews, 69 Texas, 341, 344, 6 S. W., 567; White v. Cole, 87 Texas, 500, 29 S. W., 759.

But if the holder of a vendor's lien note had never acquired the superior title, or had parted with it, or if as an original vendor he had transferred any of the notes which the superior title was reserved to secure, he could not maintain an action for the land. In other words, to maintain an action to recover the land, the ownership of the barred vendor's lien notes and the superior title was required to be in one and the same person. Farmers Loan and Trust Co. v. Beckley, 93 Texas, 267, 54 S. W., 1027; Stephens v. Mathews, 69 Texas, 341, 6 S. W., 567; Hatton v. Bodan Lumber Co., 57 Texas Civ. App., 478, 123 S. W., 163, 166; Douglass v. Blount, 95 Texas, 369, 380, 58 L. R. A., 699, 67 S. W., 484.

In the case where the barred note was secured by a deed of trust or mortgage containing a power of sale, such power of sale, not calling for a judicial process, could be executed, although an action on the debt was barred by limitation. Fievel v. Zuber, 67 Texas, 275, 3 S. W., 273; Goldfrank v. Young, 64 Texas, 432.

To remedy such evils as this condition was conceived to permit, the Twenty-ninth Legislature at its regular session passed an Act to fix the time within which the power of sale conferred in mortgages and deeds of trust might be exercised, and after which vendor's liens should be presumed to be released and satisfied. This Act, Chapter 138, General Laws of the Regular Session of the Twenty-ninth Legislature, became effective July 14, 1905, and was incorporated in the Revised Statutes of 1911, Sections 1, 2, and 3 thereof becoming, respectively, Articles 5693, 5694, and 5695, of the Revised Civil Statutes of 1911.

This Act was prospective only in its operation, and rights and remedies as to obligations created prior to July 14, 1905, were in no way affected by it. As to obligations created subsequent to that date, it provided in effect that the right to sue for and recover land by virtue of the retention of the superior title, and the right to make

sales under powers of sale contained in deeds of trust or mortgages on real estate, should be barred in ten years from the dates of the maturity of the debts secured by these instruments. The purpose of the Act was to impose and make effective, as to future obligations, a bar of ten years limitation where none had previously existed. Notes secured by vendor's liens, and those secured by deeds of trust or mortgages, together with the liens, were, as theretofore, barred in four years. The Act contained provisions for statutory extensions, which are shown in Art. 5695, R. S. 1911. No further changes were made in the law until amended in 1913.

The sections of the Act having been bought forward into the Revised Statutes of 1911 as Articles 5693, 5694, and 5695, respectively, the amendatory Acts took the form of amendments of these articles. The amendments were in some respects radical and far-reaching. The first amendment was made by Chapter 123, General Laws of the Thirty-third Legislature, Regular Session, which became effective July 1, 1913. This Act amended all three of the articles named. Article 5695 as thus amended was again amended by the Special Session of the same Legislature by Chapter 27, General Laws of the First Called Session of the Thirty-third Legislature, which became effective November 18, 1913. The changes made by these amendments will now be noted:

Prior to the enactment of these amendments there were three classes of obligations as determined by the character of the obligation covered by the then existing limitation Acts, to-wit: (a) Vendor's lien notes and notes secured by deeds of trust and mortgages were themselves, and the liens which secured them, barred by the previously existing statute of four years limitation; (b) powers of sale contained in deeds of trust and mortgages were barred by ten years limitation; and, (c) the right to recover lands by virtue of the retention of the superior title was likewise barred by ten years limitation.

There were two divisions of obligations, as determined by the dates of their creation, covered by the then existing limitation laws, as follows: (a) Those executed prior to July 14, 1905, to which the amendment effective on that date did not apply; and, (b) those created thereafter, which that amendment did affect.

We shall now see that the acts of 1913 undertook to deal specifically with all three classes of obligations as determined by the character of the obligation, and both divisions of these obligations as determined by the dates of their creation, together with the creation of a third division, by virtue of which the plaintiff, Cathey, asserts his rights in this case.

Article 5693, as amended by the Act effective July 1, 1913, related to the time within which powers of sale under deeds of trust and mortgages could be executed. It provided in effect that the power of sale conferred by deeds of trust or mortgages upon real estate could

not be enforced after the expiration of four years from the maturity of the debt secured; that all such sales should be void, and could be enjoined; that the lien created by the instrument should cease to exist after the debt was barred; that if more than one note was secured by the obligation, the bar would not become complete until the last maturing note was barred, but could be executed as to all notes or obligations not then barred by the four years statute of limitation.

The article as amended differed in some essentials from the original article, in that it reduced the period of limitation from ten to four years, and not only declared sales made under barred powers of sale void and subject to injunction, and denied all remedies for the enforcement of such obligations, but extinguished the right by declaring that the lien should cease to exist after the debt was barred. The original article applied only to obligations created subsequent to its enactment, while as amended it applied to both previous and subsequent ones.

At the dates when the original article and the above amendment were enacted, and long prior thereto, it was the holding of this Court that the fact that a debt was barred by limitation did not deprive the creditor of a remedy when he had provided by contract to enforce payment of his claim without suit; and, consequently, a sale of property could be made under a deed of trust, although an action on the debt secured thereby was barred by limitation. Fievel v. Zuber, 67 Texas, 275; Goldfrank v. Young, 64 Texas, 432.

However, this amendment, if given a literal interpretation, would deprive creditors thus situated of the right to have powers of sale executed, where the debt had been due for as long as four years at the time this Act became effective, and would, therefore, render the Act unconstitutional. Cooley's Const. Lim., (7th Ed.) pp. 410, 411; Wood on Limitations, (4th Ed.) sec. 11a; 17 R. C. L., pp. 676, 680, Secs. 18, 19, 24, (p. 681); Boon v. Chamberlain, 82 Texas, 480, 482, 18 S. W., 655; Greenlaw v. Dallas, 33 Texas Civ. App., 100, 75 S. W., 812.

But in such instances the courts, notwithstanding the statute, will give creditors within such arbitrary bar a reasonable time within which to have the powers of sale executed,—the question of reasonable time being one of fact to be determined by the court. Boon v. Chamberlain, 82 Texas, 480, 18 S. W., 655; Link v. Houston, 94 Texas, 378, 380, 59 S. W., 566; Greenlaw v. Dallas, 33 Texas Civ. App., 100, 75 S. W., 812, 813; Williams v. Bradley, 67 S. W., 170. The cases cited do not relate to powers of sale, but by analogy are applicable, and are sufficient authority for the rule announced.

We conclude the amendment must be held effective as to both prior and subsequent obligations, but as to the former creditors must be given a reasonable time to have sales made under the powers of

sale contained in their deeds of trust or mortgages before the bar attaches.

The amended statute provided a complete and specific remedy as to this class of obligations, limiting the period of limitation to four years, both as to previous and subsequent obligations, but at the same time permitting those holding prior obligations containing powers of sale a reasonable time within which to enforce them after the Act became effective. It will be seen that this amended article related to one class as to character, obligations secured by deeds of trust and mortgages; and to both divisions as to time, those created prior to July 1, 1913, including those created before July 14, 1905, and those created subsequent to July 1, 1913, when the amendment became the law.

Article 5694, as amended by this Act, included all obligations, regardless of the dates of their creation, and two classes of obligations as determined by the character of the obligation: Vendor's lien notes, and the right to sue for the land where the superior title was retained. As to the period of limitation for Vendor's lien notes, no change was made in the previously existing law, and the Act as amended, providing a four year period of limitation for foreclosure of such liens, may be regarded, in this respect, as a recognition or continuation of the previously existing statute of four years limitation, which barring the notes barred the liens. It did, however, make material changes with reference to the time within which suit might be brought for lands where the superior title was retained. The article as amended provided, and now provides, in effect, that the right to recover land by suit by virtue of the superior title retained should be barred in four years; that if suit was not brought by the original vendor, or his transferee, for the recovery of the land, or foreclosure of the lien, the purchase money would be conclusively presumed to have been paid, the suit barred, and the lien cease to exist. It was provided, however, that the lien reserved might be extended in the manner set forth in the next succeeding article of the statute.

The period of limitation, reduced from ten to four years, was made to apply to both past and subsequent obligations. This amended article, applied to obligations created prior to its enactment, would bar them if they were four years past due at the time the law became effective. But this drastic feature was relieved by the next succeeding section of the Act, in what became Article 5695, in which those owning the superior title to land were given one year after the Act became a law within which to bring suit for the land. The article as amended further provided that where several notes were secured by a deed of conveyance, the right to recover by virtue of the retention of the superior title would not be barred until the last note was barred, but could be enforced as to all notes not then barred. It is thus seen that the remaining two classes of obligations referred to as determined

by the character of the obligation were specifically provided for in the amended Act.

As before stated, Article 5695, R. S. 1911, was twice amended by the Thirty-third Legislature. The first amendment became effective July 1, and the second one November 18, 1913. We will quote the article as amended by both amendments, placing in brackets the additional words which were placed therein by the amendment effective November 18, 1913. Reading the article without the bracketed words, gives it as it was amended by the Act which became effective July 1, 1913; while with the bracketed words, the article is as re-enacted by the amendment effective November 18, 1913. For the purposes of this opinion, we have numbered the obvious paragraphs of the article with the figures (1) to (6), inclusive. The article with the paragraph numbers and bracketed words reads as follows:

"Art. 5695. (1)   When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the (party or) parties (obligated to pay such indebtedness as extended) and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded.

"(2)   The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned.

"(3)   Provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendors lien notes reserved in deeds of conveyance which were executed prior to July 14, 1905, and which are more than four years past due at the time this Act takes effect as shown by the original mortgage, deed of trust or conveyance, (or last record extension) shall have twelve months after this Act takes effect within which they may (obtain such record extension as hereinbefore provided for, or) bring suit to enforce the liens securing them if same are valid obligations when this Act takes effect and if (such debt is not so extended of record, or) suit is not brought within such time, the right (to extend such debt of record, or) bring suit to enforce such liens shall be forever barred;

"(4)   and provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendors lien notes reserved in deeds of conveyance which were executed subsequent to July 14, 1905, shall have four years after this Act takes effect within which they may (obtain such recorded extension as herein provided for, or) bring suit to enforce the liens securing them if same are

valid obligations and not already barred by the four years statutes of limitation when this Act takes effect, and (if such debt is not extended of record, or) suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to (extend such debt of record, or) bring suit to enforce the lien securing the same,

"(5) and further provided if any such obligations executed subsequent to July 14, 1905, were barred by the four years statute of limitation on the 30th of June, 1913, the owners thereof shall have four years within which to bring suit to enforce the lien securing the same;

"(6) and providing those owning the superior title to land retained in any deed of conveyance or his transferee and those subsequently acquiring such superior title by transfer, shall have twelve months after this Act takes effect within which to bring suit for the land if their claim to the land is not otherwise invalid and unless such suit is brought within twelve months after this Act takes effect, they shall be forever barred from bringing suit to recover the same."

It is unnecessary to note or discuss Paragraphs (1) and (2) of this amended article.

Paragraph (3) relates to obligations created *prior* to July 14, 1905, which were more than four years past due when the amendment became effective, and gave twelve months to obtain extensions or bring suits to enforce the liens, provided the obligations were valid ones when the Act took effect. It is unnecessary to determine what is meant by the expression "valid obligations" in this paragraph. It is sufficient to say that it could have no application to other than valid obligations, and that it does not specifically refer to those owning the superior title to lands executed *prior* to July 14, 1905.

Paragraph (4) relates to all notes secured by deeds of trust or other liens, and vendor's lien notes reserved in deeds of conveyance, executed *subsequent* to July 14, 1905. It provides, in effect, that the owners of such notes should have four years after the Act became effective, which under the second amendment was November 18, 1913, within which to bring suits to enforce the liens, *if the liens were "valid obligations and not already barred by the four years statutes of limitation."* Of course, if the obligations were valid, and not barred by the four years statute of limitation, the Legislature had the right to extend the period of limitation. Boon v. Chamberlain, 82 Texas, 482, 18 S. W., 655; Voigt v. Railway Co., 94 Texas, 357, 60 S. W., 658; Lewis v. Davidson, 51 Texas, 251, 257; Landa v. Obert, 78 Texas, 33, 46, 14 S. W., 297.

It is to be noted that this paragraph, treating of that particular division of obligations created subsequent to July 14, 1905, does not in express terms refer to the holders of superior titles to land, but relates exclusively to those obligations not barred by limitation, and the enforcement of the liens securing them.

Paragraph (5) of this amended article is the one involved in this suit, and is made the basis of the claim set forth by the plaintiff in error, Cathey. It provides that if any such obligations, namely, notes secured by deeds of trust, notes secured by other liens, and notes secured by vendor's liens, executed *subsequent* to July 14, 1905, *were barred by the four years statute of limitation on June 80, 1913,* the owners should have four years within which to bring suit to enforce the liens securing the same. We direct attention to the fact that this paragraph does not in express terms provide any remedy by suit for the recovery of land by those holding the superior title thereto.

But, when we come to examine Paragraph (6) of this article as amended, we find an express reference to and remedy for the holders of the superior title to lands. This paragraph provided that one owning the superior title to land retained in any deed of conveyance, or his transferee, or those subsequently acquiring such superior title by transfer, should have twelve months after the Act took effect within which to bring suit for the recovery of the land. This manifestly referred to those instances where the notes were barred when the Act became effective, because the previous article (Art. 5694) did not bar this particular right, when the notes were still alive, until four years after they became due. This paragraph therefore provided a specific remedy for those holding the superior title to land retained in deeds of conveyance when the notes were barred at the time the amendment became the law.

The statute, as amended, provided a remedy for the holders of each class of obligations; that is to say, for the holders of notes secured by mortgages and deeds of trust, for the holders of notes secured by vendor's liens, and for the holders of barred notes secured only by the retention of the superior title to lands. The statute likewise, in its several paragraphs, covered all divisions as to the time when the obligations were created.

The obligation held by the plaintiff in error, Cathey, falls within one of the classes which have been named, and for his benefit the specific remedy of suit for the land within twelve months after the Act became effective was enacted. Having specifically provided a remedy for him, or those similarly situated, the statute, as written in this instance, is to be construed as denying to him any other remedy. That is to say, if he was the owner and holder of the superior title, and a vendor's lien note thereby secured, but barred by limitation, his only remedy under the statute was to file suit for the recovery of the land within one year after the amendment became effective. He held the superior title to the land in controversy at the time the Acts of 1913 became effective, and his note was at that time barred by limitation. Under Paragraph (6) of the amended article he was allowed one year after November 18, 1913, to file suit for the land. This paragraph created for him an exception to the general inhibi-

tory terms of Article 5694 as amended. He came clearly within the class to which Paragraph (6) applies, but he exercised no rights under it. He did not bring an action to recover the land within the time permitted by law, and, therefore, cannot recover in this action.

It is insisted, however, that he was within the terms of Paragraph (5) of the amended article. Paragraph (5), however, does not specifically name those who hold the superior title to lands, but is general, embracing all notes secured by deeds of trust, other liens, and vendor's liens. Its terms are not confined to notes secured by deeds of trust, or other liens in which a power of sale is reserved, or to the holders of vendor's lien notes who are at the same time owners of the superior title. To give literal effect to the language of this paragraph, (5), is to make it retrospective in its operation, and grant remedies where rights may have become completely barred and other rights vested. Clearly, as to all barred notes not secured by deeds of trust, or other lien obligations with powers of sale, and vendor's lien notes in the hands of those not holding the superior title, the vendee against whom such notes were held, or those in privity with him, had a vested right to plead the bar of limitation; and the Legislature would be without authority to extend the period of limitation or time to enforce the liens.

The rule is that, while as to all causes of action not actually barred the Legislature may extend the period of limitation, yet, if rights have once become vested and perfect, the Legislature is without power to remedy or lengthen the limitation period. DeCordova v. Galveston, 4 Texas, 470; Mellinger v. Houston, 68 Texas, 37, 3 S. W., 249; Taylor v. Duncan, Dallam's Decisions, 514; First National Bank v. Preston National Bank, 85 Texas, 560, 562, 22 S. W. 579; Campbell v. Holt, 115 U. S., 620, 623, 29 L. Ed., 483; 17 R. C. L., p. 669, Sec. 6, p. 674, Secs. 15, 16; Cooley's Const. Lim., (7th Ed.) 521.

If it should be said, as some of the Courts of Civil Appeals have held, that the existence of the right to sue for the land by virtue of the retention of the superior title, where the debt is barred, is sufficient warrant for the Legislature to revive the lien as to notes that are barred, a question we do not find it necessary to decide, the answer is that it is by no means clear that such class of obligations is embraced in Paragraph (5), since this class is specifically provided for in the subsequent paragraph, (6). But if so, it is quite apparent that all other classes were as well embraced therein, but which, we have seen, could not be so included under the Constitution.

We cannot say that the Legislature intended to limit the effect of this paragraph, (5), of the amended article to those holding barred notes who were at the same time holders of the superior title, for by its plain terms it does not so read, and for the additional reason that the next paragraph, (6), covers just such a class specifically, and provides a remedy for them.

We cannot say that, had the Legislature understood the courts would limit the effect of Paragraph (5) to those holding the superior title, they would, nevertheless, have placed this paragraph in the amended article. It is not a case where we may sever an invalid portion of the paragraph and leave that which is valid intact. If we were to conclude that this paragraph, (5), could have been validly enacted as to holders of barred obligations, who at the same time held the superior title, still, in order to make it applicable to that class alone, we would be compelled to place words of limitation in the paragraph which the Legislature did not place therein. If we were to interpolate the words necessary to make the paragraph constitutional, it would not be, on our part, in any proper sense a limitation of the provision by judicial construction, but would be an act of judicial legislation, which is beyond the purpose and power of this Court. Lewis' Sutherland on Statutory construction, Vol. 1, page 588, § 290.

It will also be noted that obligations becoming barred from June 30, 1913, to November 18, 1913, were not revived or affected by Paragraph (5), and as to these, the liens would not be extended; that is, the provisions of Paragraph (5) are made to cover the period of time between July 14, 1905, and June 30, 1913; while obligations barred between June 30, 1913, and the effective date of the Act are denied the ameliorating effect of the paragraph. The classification appears to be without any foundation or basis, and therefore class legislation.

This court has held that the Constitution of the State provides for the equal protection of the law, as fully as does the Constitution of the United States. Hutcheson v. Storrie, 92 Texas, 685, 699, 45 L. R. A., 229, 71 Am. St., 884, 51 S. W., 848.

Paragraph (5) of this article of the statute as amended attempts to divide the holders of barred obligations executed subsequent to July 14, 1905, into two classes, to-wit: those whose obligations were barred on or prior to June 30, 1913, and those barred after that date and prior to November 18, 1913, when the Act became effective. There is no reason for this attempted classification. It is clearly an act of class legislation. As such, it plainly denies to citizens of the State similarly situated the equal protection of the law. The effect of it is to select particular individuals from a class and impose upon them liability from which it exempts others of the same class. The fact that the paragraph has attempted to divide the class of those holding barred obligations into two classes, does not relieve it of the vice. The mere fact of an attempted classification does not relieve a statute from the equality required by the Constitution. It must appear not only that a classification has been made, but that it is based on some reasonable ground, some difference which bears a just and proper relation to the object sought to be accomplished. Mere arbitrary selection can never be justified by

calling it classification. Encyclopedia of the U. S. Supreme Court Reports, Vol. 4, pages 362, 363; San Antonio, etc. Ry. Co. v. Wilson, 19 S. W., 910, 913; Caven v. Coleman, 96 S. W., 774, 778.

It is clear that limitation laws cannot be discriminatory or arbitrary, or deny equal protection of the law. Cooley's Const. Limitations, (7th Ed.) p. 558; Holden v. James, 11 Mass., 396.

For this additional reason, it is plain that we ought to hold, as we have held, that Paragraph (5) of this article of the statute is unconstitutional and void. The paragraph, however, is severable from the balance of the article, and this holding in no way affects any other paragraph, which is valid within itself or when taken in connection with other provisions of the limitation Act.

The judgments of the trial court and of the Court of Civil Appeals, denying a recovery in favor of the plaintiff in error, Cathey, on his cross action were proper ones.

The Court of Civil Appeals correctly held that the invalidity of this particular paragraph of Article 5695 would not have the effect of invalidating the entire article or act.

We also concur in the action of the Court of Civil Appeals in reforming the judgment of the trial court with reference to the respective rights of the plaintiff in error, Cathey, and Bailey, one of the subsequent vendees of the land. We are of the opinion, therefore, that the judgment of the Court of Civil Appeals should be in all things affirmed, and it is so ordered.

*Affirmed.*