**WOLTERS et al. v. FARMERS' LIFE INS. CO. (No. 8371.)***

(Court of Civil Appeals of Texas. Galveston. June 22, 1923. Rehearing Denied Oct. 25, 1923.)

**1. Mortgages ⟺345—Act authorizing extension of notes secured by deed of trust does not authorize sale of land under power therein after indebtedness is barred.**

The right under Acts 33d Leg. (1913) c. 123 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), to obtain an extension of a note secured by a deed of trust or bring suit to enforce the lien within four years after the act takes effect, does not include the right to sell land under a power conferred by such deed after the indebtedness secured is barred by article 5693, prohibiting the exercise of such power and invalidating a sale thereunder after four years from maturity of the indebtedness.

**2. Limitation of actions ⟺146(3)—Contract extending maturity date of note must be in writing, signed by party charged with debt.**

In view of Vernon's Sayles' Ann. Stat. 1914, art. 5705, a contract extending the maturity date of a note from which the statute begins to run must be in writing and signed by the party to be charged with the debt, whether or not it is required to be acknowledged and recorded by article 5695 to make it effective between the parties.

**3. Constitutional law ⟺171—Mortgages ⟺330—Act changing period for enforcement of powers of sale under deeds of trust held not unconstitutional as impairing obligation of contract.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 5693, prohibiting the enforcement of powers of sale conferred by deeds of trust after four years from maturity of the indebtedness secured, and invalidating such sales, *held* not unconstitutional as impairing the obligation of contracts in violation of Const. U. S. art. 1, § 10, and Const. Tex. art. 1, § 16; the requirement that the parties to existing contracts be given a reasonable time in which to enforce them after a change in the period of limitation being fully met.

**4. Limitation of actions ⟺182(5)—Executors must plead statute of limitations against claim.**

Executors are required to plead the statute of limitations against a claim.

**5. Mortgages ⟺186(6)—Right of claimant under unrecorded deed, executed before execution of deed of trust by grantor, held for jury.**

In an action for possession of land purchased at a sale under a power in a deed of trust, the right of an intervener, claiming under an unrecorded deed executed by mortgagor, pursuant to a contract to purchase the land for intervener, before execution of the deed of trust, *held* for the jury.

**6. Trial ⟺140(2)—Issue as to which interested party's testimony is not directly contradicted cannot be taken from jury, unless his testimony is corroborated or uncontradicted by circumstances.**

Unless testimony by a party to the suit as to an issue in which he is directly interested, is corroborated or at least uncontradicted by the circumstances shown, the issue cannot be taken from the jury, though his testimony is not directly contradicted.

**7. Evidence ⟺390(1)—Legal effect of deed delivered to grantee for himself cannot be questioned, except for fraud, accident, or mistake.**

The legal effect of a deed delivered to grantee, to have and to hold as his own, cannot be questioned, except on grounds of fraud, accident, or mistake.

**8. Trial ⟺352(1)—Submission of question whether deed was delivered with intent to pass title held erroneous.**

Submission of a question whether a deed was executed and delivered to grantee with the intention to vest unconditional title in him *held* erroneous, as permitting a finding that the deed, though actually delivered to grantee, was not delivered with the intention that it should pass title to the land.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by the Farmers' Life Insurance Company against J. F. Wolters and another, executor and executrix of the will of Jonathan Lane, deceased, and others, in which Walter Lane intervened. From a judgment for plaintiff, defendant executors, the American Surety Company of New York, and the intervener appeal. Reversed and rendered in part, and reversed and remanded in part.

Wolters, Storey, Blanchard & Battaile, of Houston, for appellants J. F. Wolters and Alma Lane.

L. A. Adamson and Green & Boyd, all of Houston, for appellant Walter Lane.

Bryan, Dyess & Colgin, of Houston, and W. W. Searcy, of Brenham, for appellee.

PLEASANTS, C. J. This suit was brought by the Farmers' Life Insurance Company against J. F. Wolters and Mrs. Alma Lane, independent executor and executrix of the will of Jonathan Lane, deceased, and against other parties, whose interest in and relation to the cause of action will be hereinafter stated.

The purpose of the suit was to recover the title and possession of a tract of 302 acres of land described in the petition, and, in the alternative, to recover upon a note for $10,000 executed by Jonathan Lane, and to foreclose a deed of trust lien upon the land given to secure the payment of the note.

For the purposes of this opinion the fol-

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and indexes.

*Writ of error granted December 5, 1923.

lowing is a sufficient statement of the issues presented by the pleadings:

The plaintiff, after alleging the execution and delivery of the note and deed of trust on March 1, 1912, in favor of the Continental Trust Company, and payable one year after date, and the subsequent acquisition and present ownership of said note by plaintiff, further alleged:

"That on the 1st day of June, 1913, Jonathan Lane made a payment of $1,444 on said note to John H. Thompson, who was then the duly and legally constituted president of the Continental Trust Company; that at the time said $1,444 was paid and credited on said note for $10,000, the said John H. Thompson, as president of the Continental Trust Company, agreed with said Jonathan Lane to extend the time of payment of the balance due upon said note to March 1, 1914, and the said Lane, in his own handwriting, indorsed upon the back of said note the following: 'Time of payment of the balance of this note extended to March 1, 1914, June 1, 1913' (the last date being the date on which said payment was made on said note, and when said indorsement was made on said note); and at the request of said Lane said indorsement was signed by said Thompson as follows: 'Continental Trust Co., by J. H. Thompson, President.'"

Plaintiff further alleged in its second amended original petition, being the pleading on which it went to trial, that the defendants J. F. Wolters and Mrs. Lane were, on the 26th day of July, 1916, appointed by the probate court of Harris county, and qualified as independent executors of the last will and testament of Jonathan Lane, deceased; that they were acting as such executors at the time the suit at bar was filed; that the said Lane died on May 27, 1916.

Plaintiff further alleged that all of said note for $10,000 remaining due and unpaid on December 1, 1917, except $1,444, paid on June 1, 1913, it requested that John H. Thompson, trustee under said deed of trust, sell said property covered by said deed of trust to secure the payment of said note, in accordance with the terms of said deed of trust; that accordingly said John H. Thompson did advertise said property for sale on the 1st day of January, 1918, that being the first Tuesday in said month; that said property, after due advertisement, in accordance with the terms of said deed of trust, was sold at public auction on the first Tuesday in January between the hours of 10 o'clock a. m. and 4 o'clock p. m., to the highest bidder; that plaintiff, the Farmers' Life Insurance Company, being at that time the owner and holder of said promissory note, bid for said land the sum of $11,133, which was the highest bid therefor, and same was struck off to the said Farmers' Life Insurance Company; that said John H. Thompson, as trustee, executed a deed to the Farmers' Life Insurance Company to said land, it being alleged by plaintiff that this deed vested title to said land in plaintiff.

The American Surety Company, the Texas Loan & Trust Guaranty Company, and Guy Graham, who died during the pendency of this suit, and whose legal representatives were made a party to same, were claiming some interest in the land in question by reason of abstracts of judgment set out in plaintiff's petition, and that by reason of said abstracts of judgment a cloud was cast upon plaintiff's title to said land, and all of said parties claiming an interest in said land by reason of said abstracts of judgment were made parties to this suit for the purpose of canceling said judgment liens and removing the cloud from plaintiff's title.

Plaintiff pleaded in the alternative, if for any reason it should appear on the trial of the case it had not become the legal and equitable owner of said land, that it have judgment for the amount due on said note for $10,000, dated March 1, 1912, principal interest and attorney's fees and foreclosure of its liens.

To the pleadings of plaintiff, the defendants J. F. Wolters and Mrs. Alma Lane, independent executor and executrix, respectively, of the estate of Jonathan Lane, deceased, set up a general demurrer, and both by special exception and plea set up the two and four years' statutes of limitation to plaintiff's cause of action.

By special exceptions and pleas these defendants attacked the deed under which the plaintiff claims title on the ground that the note and deed of trust, not having been renewed, could not be enforced four years after the maturity of the note, and the foreclosure and sale of the land under the deed of trust more than four years after the maturity of the note was void, and plaintiff acquired no title by such proceedings and the deed executed in pursuance thereof.

They further denied generally all of the allegations of plaintiff's petition, and specially denied that Jonathan Lane ever executed any renewal of the note held by plaintiff or signed any written acknowledgment of the justness of the debt evidenced by said note.

Walter Lane, the adopted son of Jonathan Lane, intervened in the suit and claimed title to the land under a deed of conveyance to him executed by Jonathan Lane on the 25th day of August, 1911. He further alleged that he went upon and took possession of the land under the deed from his father soon after its execution, and has remained in continuous possession and occupancy thereof since said time and was in possession of the land, cultivating, enjoying, and receiving rents therefrom, at the time the deed of trust under which plaintiff claims was executed. He further pleaded the statute of limitation of four years against the note sued on by plaintiff and denied the execution of any renewal thereof by Jonathan Lane.

He also attacks the title claimed by plaintiff under the sale under the deed of trust, and the deed from the trustee, on the ground that the sale was made more than four years after the maturity of the note, and was therefore void, and the deed executed by the trustee conveyed no title.

He further pleaded his possession and occupancy of the land at the time the abstracts of judgments, under which the defendant American Surety Company of New York claims a lien upon the land, were filed and recorded.

The defendant American Surety Company of New York, in answer to plaintiff's suit, after general and special denial, pleaded, in substance, that it was the owner of a judgment in the sum of $5,255.61, with attorney's fees, interest, and costs of suit rendered against Jonathan Lane by the district court of Harris county and that an abstract of said judgment had been duly filed and recorded in Wharton county, where the land in controversy is situated, on July 26, 1916, and thereby fixing a lien on the land to secure the payment of said judgment. This defendant assailed plaintiff's claim of title and of right to recover on the $10,000 note, on the grounds pleaded by its codefendants Wolters and Mrs. Alma Lane. It prayed that plaintiff take nothing by its suit, and that this defendant have, judgment against all parties to the suit, fixing and foreclosing its judgment lien upon the land.

Plaintiff, by supplemental petition, denied the right of the defendant executors to plead limitation for the following reasons:

"Because at the date, to wit, June 1, 1913, on which the said Jonathan Lane made payment of $1,444 on said note, the said Jonathan Lane was the attorney for the Continental Trust Company, and requested an extension of said note, and in his own handwriting indorsed an extension thereon and requested the said John H. Thompson to sign same as president of the Continental Trust Company, which was considered sufficient to protect the interest of all parties concerned.

"Because the statutes of limitation were suspended from May 27, 1916, the date of Jonathan Lane's death, to the 26th day of July, 1916, the date on which these defendants were appointed and qualified as independent executors.

"Because the defendant Wolters was an attorney for plaintiff, and represented it in all matters in the state of Texas, and, at the request of the said Wolters and the said Mrs. Alma Lane, the collection of said note was not pressed, and the said defendant executors promised to pay said note, and for this reason the collection was not pressed, for which reason these defendants should be estopped to plead the statutes of limitation in bar of plaintiff's right to recovery on said note. * * *

"Because the Acts of the 1913 Legislature, under which these defendants pleaded limitation to plaintiff's right to recovery, were unconstitutional and void, being in violation of section 10, art. 1, of the federal Constitution, and also a violation of and contrary to section 19, art. 1, of the Constitution of the state of Texas, and was also in violation of and contrary to section 16 of the Bill of Rights, Constitution of the state of Texas."

The claims of all the other parties to the suit were eliminated by dismissal or abandonment in the progress of the trial, and the only issues presented to this court are raised by the pleadings of the parties before set out.

The case was submitted to a jury in the court below upon special issues, and upon the findings of the jury and the evidence, the trial court rendered judgment in favor of appellee Farmers' Life Insurance Company against the defendants and intervener for the title and possession of the land in controversy.

From this judgment the defendant executors, the American Surety Company, and the intervener, Walter Lane, have separately appealed, and have filed separate briefs.

The note for $10,000, upon which appellee's claim is based, was executed by Jonathan Lane on March 1, 1912, and the deed of trust given to secure the note, and which conveys the land in controversy, was executed on the same day. The note was payable 12 months after date. The following indorsement appears on the back of the note:

"Time of payment of this note extended to March 1, 1914. June 1, 1913. Continental Trust Co., by J. H. Thompson, President."

On the day this extension indorsement was made a payment of $1,444 was made on the note; this payment being also indorsed on the back of the note.

Mr. J. H. Thompson was president and one of the directors of the Continental Trust Company, and Mr. Lane was a vice president, the general counsel, and a director of the company. In regard to this extension indorsement, Mr. Thompson testified:

"I had known Mr. Lane about 18 years. For about 7 or 8 years prior to his death, our relations were intimate. I met Mr. Lane after this note became due. I remarked to him that his note given for $10,000, dated March 1, 1912, to the Continental Trust Company, payable 12 months after date, was past due. He answered, saying, 'I would like to renew it if satisfactory.' I replied that it would be satisfactory for him to renew it. He then said he was very busy and asked me if I could bring the note over to his office, so that he could renew it. I told him I would, and within the next two or three days I took the note to his private office, and told him that I had his note, and also stated the purpose of my visit, which was to have him renew it. He said, 'All right'; that he wanted to do so. I handed him the note; he read it, and said, 'I will write an extension on the back of it.' After he had written the extension on the back of the note, he handed it to me to read. I read and signed it, officially, for the Continental Trust Co."

The balance due on this note was never paid. Jonathan Lane died on May 27, 1916, and his estate is insolvent. J. F. Wolters and Mrs. Alma Lane qualified as independent executor and executrix, respectively, under the will of Jonathan Lane, on July 27, 1916. The land was sold under the deed of trust on January 1, 1918. This suit was filed on February 28, 1918.

Upon this evidence, it is contended by all of the appellants that appellee was not entitled to recover the land, nor a judgment on the note, because, there having been no renewal of the note as required by the statute, the sale of the land under the deed of trust, more than four years after the maturity of the note, was void, and appellee acquired no title under such sale, and, there having been no renewal of the note signed by Jonathan Lane, appellants' pleas of limitation to appellee's suit on the note should have been sustained. These contentions are made under the following propositions, presented in the brief of appellants J. F. Wolters and Mrs. Alma Lane:

"The undisputed evidence having shown that the power of sale under the deed of trust executed on March 1, 1912, to secure the note of $10,000 due March 1, 1913, was not exercised by John H. Thompson, trustee, until after 4 years had elapsed from the date of maturity expressed in said note, and from the date of maturity expressed in said deed of trust, and, there being no recorded renewal or extension of said note as required by law, the sale by the trustee under said power of sale was void, and the deed from the trustee to plaintiff herein was likewise void, and passed no title, and it was error for the court to render judgment for plaintiff for the land sued for."

"An acknowledgment, made subsequent to the time of maturity of the note sued on, which acknowledgment is relied on to take the case out of the operation of the statute of limitation, to be admissible in evidence, must be in writing and signed by the party to be charged thereby."

Articles 5693 and 5695 of our statutes (Vernon's Sayles' Civil Statutes) contain the following provisions:

"No power of sale conferred by any deed of trust or any mortgage on real estate heretofore executed, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby."

This article was amended to read as above set out by Acts of the Thirty-Third Legislature, Regular Session, 1913, p. 250, and became effective July 1, 1913.

Article 5695 is as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned.

" * * * And provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed subsequent to July 14, 1905, shall have four years after this act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the liens securing them if same are valid obligations and not already barred by the four years' statutes of limitation when this act takes effect, and if such debt is not extended of record or suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing the same. * * * * "

This article was also amended to read as above set out by an act of the Legislature passed at the first called session of the Legislature held in 1913, which took effect on November 18, 1913.

[1] Article 5693, above quoted, is not susceptible of any other construction than as a positive prohibition of the exercise of a power of sale conferred by a deed of trust on land after the expiration of 4 years from the maturity of the indebtedness secured by the deed of trust, and a positive unequivocal declaration that such a sale is void.

We do not understand counsel for appellee to question this construction of the statute, but they contend that under the provisions of article 5695, above quoted, which gave to the owner of the note, secured by deed of trust executed after July 1, 1905, 4 years after the taking effect of the act within which to secure a recorded extension of the lien, or to bring suit to enforce same, appellee's right to foreclose its lien by sale under the power conferred by the deed of trust had not expired on January 1, 1918, when the sale in controversy was made.

Deducting the 60 days which elapsed between the death of Jonathan Lane and the qualification of his executors, the sale on January 1, 1918, was made within less than 4 years from the time the act took effect, and, if appellee's construction of the statute is sound, its contention should be sustained.

We cannot, however, give article 5695 the construction contended for by appellee. This article modifies the clear and positive provisions of article 5693 only to the extent of declaring that the maturity date of a note secured by a deed of trust may be extended by a written contract of renewal executed by the party obligated to pay the indebtedness, and that such extension of the debt also extends the lien and power of sale, and, providing further, that the owner of any indebtedness secured by a deed of trust executed subsequent to July 1, 1905, shall have four years from the taking effect of the act within which to obtain an extension or bring suit to enforce his lien. The right to obtain an extension or to bring suit to enforce the lien cannot be enlarged to include the right to sell land under the powers conferred by a deed of trust after the indebtedness to secure which the lien was given has become barred by the statute of limitation of 4 years, in the face of the positive, unequivocal provisions of article 5693 that such power cannot be exercised, and a sale made thereunder is void.

If the note was barred by limitation at the time the sale under the deed of trust was made, we think it clear that such sale was void. Turner v. Gregory (Tex. Civ. App.) 203 S. W. 615; Howard v. Stahl (Tex. Civ. App.) 211 S. W. 826.

Our construction of this statute and that given it in the cases just cited is not in conflict with the holding in the cases of McCutcheon & Church v. Smith, 111 Tex. 554, 242 S. W. 455, and Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447, cited by appellee.

[2] This brings us to the second contention of appellee, which is that the extension of the note indorsed on the back thereof and signed only by the payee in the note was a sufficient contract of extension under the statute to prevent the note becoming barred by the 4 years' statute of limitation before March 1, 1918.

We think the provisions of the statute furnish a conclusive answer to this contention. Article 5695, above quoted, provides that a contract of extension, sufficient to change the maturity date of a note from which the 4 years' statute of limitation begins to run, must be signed and acknowledged by the party obligated to pay the note, and filed for record in the office of the county clerk.

A majority of this court held, in the cases of Templeman v. Kempner, 223 S. W. 293, and Amonette v. Taylor, 244 S. W. 238, that the provisions of this statute that the contract of extension shall be acknowledged and recorded is only required to be complied with where the rights of third parties are involved, and that, as between the parties to the instrument, any written renewal or acknowledgment of the debt will fix the date from which limitation begins to run. Justice Graves dissented in both of the cases cited,

and holds to the opinion that an extension or renewal of note secured by a deed of trust on land will not be effective even as between the parties to the instrument, unless it is acknowledged and recorded. The writer adheres to the holding that the requirement of acknowledgment and record is only for the purpose of giving notice to purchasers of the land of the existence of the lien.

But, regardless of whether the contract of extension is required to be acknowledged and recorded to make it effective between the parties to the contract, there can, we think, be no question that it must be in writing and signed by the party to be charged with the debt. This has been the requirement of our statute since 1841.

That statute, which is now 5705, Vernon's Sayles' Civil Statutes, is as follows:

"When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

It is true that a written instrument purporting to be a contract between parties and signed by only one of the parties becomes binding upon both if accepted and acted upon by the party who has not signed it. This principle of the law of contract has been frequently recognized and enforced by our Supreme and appellate courts, but we have found no case in which it has been applied to a contract required by statute to be signed by the party sought to be charged thereby. A verbal contract to extend the time of payment of a note, if supported by a consideration, is binding upon the parties, yet it would not be contended that such a contract would keep the note alive for 4 years from the date of the contract. So, in this case, the trust company and Jonathan Lane were both bound by the agreement to extend the time of payment of the note to March 1, 1914. The company could not have enforced collection of the note prior to that date, nor could Lane have forced the company prior to March 1, 1914, to receive in satisfaction of the note an amount which did not include interest up to the date to which the extension was made.

But the fact that the contract was valid and binding does not give it the effect of a contract signed by the party sought to be charged thereby, in the purview of the limitation statute above set out.

[3] Appellee's next contention, that article 5693 is unconstitutional and void because it impairs the obligation of a contract, in violation of the tenth section of article 1, of the federal Constitution, and section 16, art. 1, of the Constitution of the state of Texas, cannot be sustained.

The right of a state to change its limitation laws and apply such changes to existing contracts is well settled; the only limitation upon the right being that, in making such change, parties to existing contracts must be given a reasonable time in which to enforce their contracts after the change in the law takes effect. This requirement is fully met in this statute, and its constitutionality has been upheld by our Supreme Court in the case of Cathey v. Weaver, 111 Tex. 515, 242 S. W. 450.

[4] Neither the pleading nor the evidence raises the issue of fraud by Jonathan Lane or the defendant executors which would defeat appellants' right to plead the statute of limitation against appellee's claim. The executors were required, in discharge of their duty to the estate, to make such plea.

In our opinion the law applicable to the undisputed facts in this case requires the holding that appellee's cause of action was barred by the 4 years' statute of limitation when the suit was filed, and the appellants' plea of limitation must be sustained.

This conclusion requires that the judgment of the trial court be reversed, and judgment here rendered that appellee take nothing against any of the appellants. The record is not in a condition to enable this court to render a judgment as between the appellants.

[5] The evidence in support of intervener Walter Lane's claim of title is as follows:

On the 23d day of November, 1918, Jonathan Lane entered into a contract of purchase of the land in controversy from the Missouri-Lincoln Trust Company and George W. Wilson, trustee. The following indorsement appears upon the back of this contract:

                    "Dec. 20, 1908.

"I bought the within described tract of land for my son, Walter Lane, and have placed my brother, H. A. Lane, in actual possession of it for him. As soon as I have fully paid for it, I hereby promise to deed and convey the said land to said Walter Lane. This I do for the love and affection I have for him, and for a valuable consideration also.

                    "Jonathan Lane."

On August 25, 1911, the Missouri-Lincoln Trust Company and George W. Wilson, trustee, conveyed the land to Jonathan Lane. The following deed from Jonathan Lane to Walter Lane is written on the back of the deed to Jonathan Lane above mentioned:

"That State of Texas, County of Harris.

"Know all men by these presents: That I, Jonathan Lane, of Harris county, Texas, for a full, sufficient and valuable consideration, fully paid by Walter Lane, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto my son, Walter Lane, of Harris county, Texas, all of the within described tract of land.

"To have and to hold the within described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Walter Lane, his heirs and assigns, forever, and I do hereby bind myself, my heirs and assigns to warrant and forever defend all and singular the premises unto the said Walter Lane, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand and signature this the 12th day of October, A. D. 1911.

                    "Jonathan Lane."

Walter Lane, for himself, testified that he knew Jonathan Lane's handwriting, and that the indorsement on the back of the purchase contract, and the deed from Jonathan Lane to Walter Lane, were both in the handwriting of Jonathan Lane, and that Jonathan Lane delivered them to him in their room in the Rice Hotel in the fall of 1911, and told him that it was the deed to 302 acres, to his farm at Lane City, and told him to read it and put it away; that Jonathan Lane had previously shown him the land; that they had ridden over it together, and that he had previously told him that he was buying this tract of land for him and that H. A. Lane was in possession of it, and that he, Walter Lane, was the foster son of Jonathan Lane.

The witness H. A. Lane testified that Jonathan Lane told him that he would buy this tract of land for Walter Lane if he (H. A. Lane) would live on it until such time as Walter Lane wanted it; that Jonathan Lane bought the 302 acres of land at Lane City, and that he (H. A. Lane) went into possession of it in 1908, and continued in possession until the fall of 1915, and that during that time there were no new instructions as to whom he was holding possession of this land for, and that no one had made inquiry of him as to whom he was holding the land for.

T. W. Lane testified that he took possession of the land after J. A. Lane left it. He further testified:

"I took possession of the place at request of my brother, Jonathan. I was holding the land for the use and benefit of Walter Lane; arrangements to take possession of said land were made with Jonathan Lane for benefit of Walter Lane. My brother, Hal Lane, left the place, and Jonathan Lane told me to take care of the place for Walter Lane, and the first year I rented to a Mexican, and he made no crop, so paid no rent; then Jonathan Lane died and for two or three years I rented the place to tenants and paid all rents to Walter Lane until he took charge of same three years ago. I held possession of the said land for three years and then turned it over to Walter Lane. I put some improvements on said land. I put fences on same, and my recollection now is that I paid out about $300 on fences and $250 on repairs and improvements on buildings. I held possession of said land for three years, and Walter Lane took possession after I gave up the premises."

The land was inventoried as belonging to the estate of Jonathan Lane, and there is no evidence that the intervener claimed to have a deed therefor until shortly before this suit was filed, nor that the executors or any one knew of the existence or delivery of this deed prior to the death of Jonathan Lane.

After the death of Jonathan Lane the intervener tried to make an exchange with the appellee of property owned by him in Houston for appellee's claim on the land. In these negotiations he did not claim to have a deed to the land from Jonathan Lane, and neither the Farmers' Life Insurance Company, the trustee in the deed of trust, nor, so far as this record shows, any one else, knew that intervener had or claimed to have a deed to the land from his father until after the sale under the deed of trust. We cannot agree with counsel for intervener that upon this state of the evidence the trial court should have instructed a verdict in intervener's favor.

[6] It is true that intervener's testimony as to the delivery of the deed is not directly contradicted, but, being a party to the suit and directly interested in the issue upon which his testimony was given, it seems to be the established rule in this state, following the decision of the United States Supreme Court in the case of Sonnentheil v. Christian Moerlein Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492, that, unless such testimony is corroborated by all the circumstances shown by the evidence, or at least that no circumstances are shown tending to contradict it, the issue cannot be taken from the jury. Ry. Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 772; Groves v. Whittenberg (Tex. Civ. App.) 165 S. W. 891; Rayner v. Posey (Tex. Civ. App.) 173 S. W. 246; Mills v. Mills (Tex. Com. App.) 228 S. W. 919.

[7, 8] The issue as to the delivery of the deed by Jonathan Lane to the intervener was submitted to the jury by the following question:

"Was the deed from Jonathan Lane to Walter Lane for the land in controversy executed and delivered to Walter Lane before March 1, 1912, with the intention on the part of Jonathan Lane to then and there pass and vest unconditional title to said property to Walter Lane?"

In response to this question the jury answered, "No."

The intervener excepted to this question on the ground that it permitted the jury to find that, though the deed was actually delivered to intervener, as testified to by him, it was not delivered by Jonathan Lane with the intention that it should pass title to the land.

We think this objection to the question should be sustained. The deed speaks for itself, and its legal effect cannot be made the subject of inquiry by the jury. The evidence does not raise any issue as to the character of the delivery to the intervener, if it was delivered to him to have and to hold as his own, it defines its purpose, and its legal effect cannot be questioned except upon grounds of fraud, accident, or mistake. McCartney v. McCartney, 93 Tex. 359, 55 S. W. 310; Johnson v. Masterson (Tex. Civ. App.) 193 S. W. 201.

This conclusion is not in conflict with the decision of our Supreme Court in the case of Coleman v. Easton, 249 S. W. 200. In that case there was evidence to sustain a finding that the deed in question was delivered to the wife by the husband, not to have and to hold for herself, but to keep for the husband, and the court held that the issue as to the character of the delivery was properly submitted to the jury. But in this case, as before said, no such issue was raised by the evidence. The evidence leaves no doubt that the deed was written and signed by Jonathan Lane, and the issue that should have been submitted to the jury was whether Jonathan Lane delivered it to the intervener prior to the execution of the deed of trust to the appellee.

The intervener was entitled to have the jury pass directly upon this sole issue and not permit them to find that the deed was delivered, as testified to by intervener, but that Jonathan Lane did not intend that it should vest unconditional title to the property in the intervener.

Other questions presented by the intervener need not be discussed.

As we have before stated, in the state of the record no judgment can be rendered by us as between the appellants, and the cause is therefore remanded for trial between the intervener and the other appellants.

Reversed and rendered in part, and reversed and remanded in part.