### G. P. MEADE ET AL. V. J. R. SANDIDGE.

#### No. 1629.

1. **Negotiable Note—Indorsed Memorandum—Alteration.**—After the execution of a note given for land, a question as to the title of the land having arisen, a memorandum was, by agreement between the maker and payee, indorsed on the back of the note restraining its negotiability, which indorsement the payee fraudulently erased and sold the note before maturity. *Held*, that such erasure was an alteration of the note, and the maker could plead the failure of consideration against any purchaser thereof.

2. **Same—Failure of Consideration—Notice—Inquiry.**—Notice to an intending purchaser of a note given for land, that there is a partial failure of the title to the land, puts him upon inquiry as to whether the failure of consideration for the note is not entire.

#### ON REHEARING.

3. **Same—Pleas of Alteration and Failure of Consideration.**—Under the plea of non est factum, proof of the alteration by erasure of the memorandum would defeat a recovery, without reference to the failure of consideration; and as the indorsement destroyed the negotiability of the note, failure of consideration could be pleaded, irrespective of the alteration, or whether the purchaser of the note had notice of such failure or not.

APPEAL from Tarrant.    Tried below before Hon. W. D. HARRIS.

*Bomar & Bomar*, for appellants.—1.   An indorsement on the back of a note that affects its terms is a part of the note, even if placed there after the execution of the note; and the fraudulent changing of a negotiable promissory note, or an indorsement thereon that effects its terms, destroys the note as well as the debt.    Bowers v. Cole, 74 Texas, 222; Park v. Glover, 23 Texas, 472; Bogart v. Breedlove, 39 Texas, 561; Harper v. Short, 41 Texas, 367; Benedict v. Cowlen, 49 N. Y., 396; Tied. Com. Paper, secs. 392–400; 2 Dan. Neg. Inst., secs. 1410a–1417; Wheelock v. Freeman, 13 Pick., 165; Belknap v. Bank, 100 Mass., 379; Wade v. Wittington, 1 Allen, 561.

2.   If after a negotiable promissory note is executed, the parties afterwards, by mutual consent or agreement, for a valuable consideration, place an indorsement thereon that makes it non-negotiable, it becomes a part of the instrument, the same as if the old note had been destroyed and a new note executed that was non-negotiable.    Benedict v. Crowden, 49 N. Y., 396; Woodworth v. Bank, 19 Johns., 391; 2 Dan. Neg. Inst., sec. 1383; Barnard v. Cushing, 4 Metc., 230; Bank v. Ewing, 78 Ky., 266; Blake v. Coleman, 22 Wis., 416.

3.   When an indorsement on a note negotiable on its face, to the effect that the note is non-negotiable, is erased, no one holding said note by after transfer can be an innocent purchaser, notwithstanding he knew nothing of the indorsement thereon, and had nothing to place him upon inquiry.    Steffian v. Bank, 69 Texas, 513; Benedict v. Crowden, 49 N. Y., 396; Wood v. Steele (U. S.), L. Co-op. ed., book 18, p. 725.

4. Notice of the failure of the title to a part of a tract of land sold by warranty deed is sufficient to put a prudent man upon inquiry as to the entire effect of the failure of title before purchasing a negotiable note given for a part of the purchase money for said land, and this rule is not changed by article 272, Revised Statutes. Dan. Neg. Inst., secs. 816, 817, 819; Greneaux v. Wheeler, 6 Texas, 515.

*A. M. Carter*, for appellee.—1. The court's action in sustaining plaintiff's exception to defendant's plea of non est factum was correct, taken as a whole, it was an admission of the making of said note, and the subsequently making and indorsing of another and entirely different contract on same, and its subsequent erasure. Chitty on Bills, 160, 161; Bay v. Shrader, 50 Miss., 326; Krouskop v. Shoutz, 51 Wis., 204; The Commonwealth v. Ward, 2 Mass., 397; Fletcher v. Blodgett, 16 Vt , 26.

2  The findings of fact by the court do not negative that J. A. Lee and appellee J. R. Sandidge were not bona fide purchasers and holders of the note sued on, hence the court should have given him a judgment for the full amount of the note, interest, attorney's fees, and costs of suit. Herman v. Gunter, 83 Texas, 68; Petri & Bro. v. Bank, 83 Texas, 427; same case, 84 Texas, 213; Wilson v. Denton, 82 Texas, 535.

3. The notice to J A. Lee, when he took the note sued on, that there was a defect in the title to some of the land for which it was given, did not affect the transaction with bad faith, or make Lee a holder of said note in bad faith, nor prevent him being a bona fide holder for value. Davis v. Gray, 61 Texas, 507; Greneaux v. Wheeler, 6 Texas, 526; Wilson v. Denton, 82 Texas, 534.

STEPHENS, ASSOCIATE JUSTICE.—This suit is upon a note negotiable in form, in the sum of $3151.20, dated January 30, 1889, payable three years after date, to the order of R. F. Roberts, and indorsed in blank by him.

We approve, with the modifications stated below, the conclusions of fact found in the record, reading:

"1. On January 30, 1889, the defendants purchased from R. F. Roberts four tracts of land, one for 1322 acres, one for 640 acres, and one other for 640, and one for 220 acres, agreeing to give therefor the sum of, to wit, $9650.20, of which $500 was paid in cash, $3480 was evidenced by note for thirty days, and $2500 was settled by assuming to pay an incumbrance for that amount which was at that time on two of the 640 acres tracts, and the remaining part of the purchase money was evidenced by the note sued on.

"2. The note due in thirty days was paid at maturity, and so was the $2500 incumbrance, which, however, did not mature until the 1st day of May, 1893.

"3. In January, 1890, and about one year after the note sued on was given by agreement between the defendants and said Roberts, there was an indorsement made on the note sued on, to the effect 'that it should be subject to any defense in the hands of any purchaser that existed against it in the hands of said Roberts.'

"4. That the title to the 1322 acres tract failed, as set forth in the defendants' answer, and the same was wholly lost to them. At the time that information as to the failure of title was first given defendants, they had already paid off the $3400, and after its failure they were compelled to pay off the $2500, it being on two of the tracts to which the title did not fail.

"5 Said Roberts made to the defendants, on said January 30, 1889, a warranty deed to all the land, and the fact that such deed was made was recited in the face of the note sued on, but said note does not show whether it was the representative of the entire purchase price of all the lands, or only a part of it.

"6. On, to wit, January, 1891, J A. Lee, of Fort Worth, made a loan of $1000 to said Roberts, taking said Roberts' note for same, specifying therein that it was to become due January 30, 1892, and to draw interest at 12 per cent per annum, and provided for 10 per cent attorney's fees in case of collection by law, and took from said Roberts the note sued on as collateral to secure the payment of said note, $1000, it being specified in the $1000 note that the note sued on had been given as collateral, and providing in said $1000, that if same should not be paid at maturity, that J A. Lee might sell the note sued on at private sale, and apply the proceeds to the payment of said $1000, and to pay over the overplus, if any, arising from said sale, to the said Roberts.

"7. That before the note sued on was offered to said Lee as collateral, said Roberts caused the indorsement made on the note in 1890 to be marked out by pen and ink, in such a manner as to make it impossible to read what had been thereon.

"8. That said Lee was informed at the time he took the note sued on as collateral, that the title to a part of the land for which the note was given had failed, but was also at the same time informed and given to understand that a part of it had not failed, and that the note was good to an amount sufficient to secure the said $1000 note, and he took the same believing it was so. That said Lee's informant was a lawyer in Fort Worth who assumed to be acquainted with the land mentioned in the note, and his statement was relied upon by said Lee in making the loan and taking the collateral.

"9. That nothing was said at the time of the loan as to just what land the title to had failed, and nothing was said as to there having been any other sums paid before then on the land, or any other amounts owing on the land besides that represented by the notes sued on.

"10. That said Lee did not keep said note till its maturity, but about January 30, 1892, sold the $1000 note to plaintiff, and also delivered to

him the note sued on, the same being sold and the collateral delivered with it to plaintiff for a sum of money equal to the principal and interest then accrued on the $1000 note.

"11. The plaintiff not having collected his $1000 at maturity, sued on the collateral, claiming that he was the owner of same by purchase from Lee.

"12. That the land to which title failed was worth 50 cents per acre, on an average, less than the other lands mentioned in the note sued on."

In lieu of the last clause of the fifth finding, beginning "but," etc., we substitute the conclusion, that said note showed on its face that it represented only a part of the aggregate purchase money of the four several tracts of land therein described. This recital appears not only in the printed part of the note, but also in the written portion.

In lieu of the tenth finding, we substitute the conclusion that said Lee, on January 30, 1892, the day upon which both notes would have been due but for the three days of grace, sold the $1000 note payable to the order of J. A. Lee, and delivered the same to plaintiff, but without any indorsement, in the face of which was the stipulation, under the signature of R. F. Roberts, that to better secure its payment there was deposited with J. A. Lee the note dated January 30, 1889, and due January 30, 1892, for $3151.20, and signed by D. T. Bomar and G. P. Meade, and payable to Roberts, to be by him held as collateral security for the payment of said note; and providing further, in case of its not being paid at maturity, that J. A. Lee would then, or at any time thereafter, be fully authorized and empowered to sell the note so deposited with him as collateral security, at private sale, without notice, etc., as set out in the sixth finding. At the same time, and as a part of the same transaction, and for the same consideration, to wit, the amount of the $1000 note, principal, and interest, said Lee sold the note sued on to plaintiff, which was likewise delivered to him.

Plaintiff testified in reference to the large note: "I knew when I bought it that it had not been paid at maturity. I considered the note due the day it showed to be due on its face, not the ten days afterwards, that the makers would be liable for attorney's fees. * * * I bought the note for speculation, and wanted to collect it all."

The testimony of Lee was all to the effect that he sold both notes together, and there was no evidence on the part of either Lee or Sandidge that the $1000 note only was sold, accompanied by the other note as collateral to better secure its payment.

In addition to the above findings, we deduce from the statement of facts the further conclusion, that the indorsement which had been made upon the note in suit in January, 1890, by the consent of all parties, as set forth in the third finding, was by said Roberts thereafter, and before its negotiation to Lee, without the knowledge or consent of appellants, and with intent to defraud them, erased, as set forth in the seventh finding. This indorsement had been placed opposite the body of the note,

so that it could not be separated therefrom except by an erasure. The erasure in question—the note having been sent up for our inspection—is a very emphatic and conspicuous one, in very black ink, and evinces clearly a design to obliterate every vestige of the pre-existing indorsement.

*Conclusions of Law.*—1. Deducting the relative value of the 1322 acres tract of land, to which the title failed, from the contract price of the whole, there was an entire failure in the consideration of the note sued on.

2. The negotiable form of the note having been changed by the indorsement placed thereon in January, 1890, for that purpose, and that indorsement having been fraudulently erased by the holder of the note, the defense of failure of consideration was available to appellants in this suit.

The law upon this subject is thus stated by Mr. Tiedeman, in his work on Commercial Paper: "Although there are some early cases in New York to the contrary, the weight of authority in this country, as well as in England, is in favor of recognizing as part of the instrument, and as controlling its operation, every memorandum which can affect its character, whether it is written on the face or on the back of the paper. No difference is recognized in their legal effect. It has been very generally held, that memoranda on the back of the instrument constitute a part of it; that the purport of the instrument is not only to be collected from the four corners, but from the eight corners." Sec. 41 and numerous cases there cited. "But if the memorandum is added to the paper after it has been negotiated, the effect of it will depend upon the circumstances. If it is made with the consent of all parties, it controls the operation of the instrument in the same manner as if it had been added before delivery; if it was added by a stranger, it will be treated as surplusage, and have no effect upon the character of the instrument. But if the memorandum is made by the holder, and without the consent of the other parties, it is an alteration which, if material, will avoid the instrument." Sec. 41a; Woodworth v. Bank of America, 10 Am. Dec., 239, and note.

See also the elaborate note of Mr. Freeman to Tuckerman v. Hartwell, 14 American Decisions, 232, where the authorities are collected and ably reviewed, and this terse statement is made: "The alteration of a memorandum constituting a part of a note or bill is governed by the same rules as the alteration of the body of the instrument, except in some instances where the memorandum has been so made as to permit of an alteration, or cutting off from the note or bill, without affecting the apparent regularity of the instrument." These excepted instances are placed upon the ground that the maker of negotiable paper is liable to the bona fide holder "on account of his own negligence in executing and issuing a note that invited tampering with."

In further support of the above propositions, see 2 Daniel on Negotiable Instruments, sections 1407, 1407a; Bowser v. Cole, 74 Texas, 222, and cases there cited.

3. J. A. Lee having actual notice before the negotiation of the note to him that there had been at least a partial failure of the consideration, it was incumbent on him to have prosecuted that reasonable inquiry which would have led to a knowledge of all the facts; and therefore, without reference to the question of the fraudulent alteration of the note, he was not a bona fide holder thereof, so as to shut out the defense of failure of consideration between the original parties. Appellee having undertaken for purposes of speculation to purchase this note, with notice of the conditions under which it was held by Lee, and of his want of power at that time to sell it, and not even having acquired the $1000 note in due course of trade, for want of an indorsement thereon, it being payable to the order of James Lee, would seem not to occupy any better position than that of Lee. Bank v. Bingham, 118 N. Y., 349.

However, in view of the second conclusion of law stated above, which requires the judgment to be reversed, we do not feel it incumbent upon us to determine definitely his legal status.

We conclude that the judgment should be reversed, and here rendered in favor of appellants.

*Reversed and rendered.*

Delivered January 30, 1895.

ON MOTION FOR REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—The contention of this motion, that we should remand the cause rather than render the judgment, on the ground that the trial court sustained an exception to the plea of fraudulent alteration in the note sued on, seems to require notice.

An examination of the record will disclose, that the exception to the answer was sustained only in so far as it set up the plea of non est factum. This was alleged as a separate and distinct defense, and under it proof of the fraudulent alteration might have defeated a recovery without reference to the alleged failure of consideration. As such the court ruled that it was not a good defense, but the fact of the indorsement destroying the negotiability of the note, together with its erasure, was relied on as a part of the plea of failure of consideration to make that defense available against the alleged bona fide holders, it being further alleged, that this erasure had been made in such manner as to put purchasers on notice. With reference to this defense, the exceptions to the answer were all overruled, and proof was fully admitted of the indorsement and erasure (the original being sent up for inspection); the court, however, holding, that neither Lee nor Sandidge "were given such notice by the marked out indorsement as

made it incumbent on them to make further inquiry in order to ascertain what it was, if anything, that said note had had indorsed thereon."

We hold that the indorsement, having been made while the note was in the hands of the original holder, by consent of all parties thereto, became an essential part thereof, and thereby its negotiability was destroyed; and that the subsequent holders must therefore stand in the shoes of the original payee, and that their position was not improved by the fraudulent alteration, notice or no notice. The trial court, deeming the alleged notice important, permitted the allegations to stand and the facts to be proven; we, deeming the notice unimportant, upon the facts so alleged and proven, hold, that the defense of failure of consideration was available against both Lee and Sandidge.

It seems also just to all parties that we should overrule this motion and permit our judgment to stand, in order that, if we have erred in a mere matter of practice, the rules of which seem to rest largely in the discretion of our Supreme Court, an opportunity may be at once afforded the injured party not only to correct that error, but such other as that learned court may be able to find in our disposition of the case on its merits. We feel the more inclined to this course because of the oral suggestion of counsel for the motion, that in the event we should conclude to remand the cause, he would be pleased to have the other questions certified.

The motion will be overruled.

*Motion overruled.*

Delivered March 6, 1895.