COMMONWEALTH BANK & TRUST CO. OF SAN ANTONIO v. LIMBURGER.
(No. 5935.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 19, 1917. Rehearing Denied Jan. 9, 1918.)

1. BILLS AND NOTES ⬤◯➔343—FAILURE OF CONSIDERATION—DUTY TO MAKE INQUIRY.

Where plaintiff bank had actual notice before it acquired the notes sued on that the stock for which they were given was issued without bringing to the corporation any assets as the basis for such stock, it knew that the consideration for the notes had failed in part at least, and was put upon inquiry as to whether there had been a total failure of consideration.

2. BILLS AND NOTES ⬤◯➔525—BONA FIDE PURCHASER—FAILURE OF CONSIDERATION.

In an action on notes, given for corporate stock, held, under the evidence, that the cashier of plaintiff bank had such knowledge with reference to the consideration for the notes as to prevent the bank from being a bona fide holder, although it purchased the notes before maturity.

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Suit by the Commonwealth Bank & Trust Company of San Antonio against Henry Limburger, Jr. Judgment for defendant, and plaintiff appeals. Affirmed.

---

⬤◯➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Lewright & Douglas and L. H. Porter, all of San Antonio, for appellant. Frank H. Sweet and Davies & Davies, all of San Antonio, for appellee.

MOURSUND, J. The West Texas Bank & Trust Company, hereinafter referred to as the bank, sued Henry Limburger, Jr., upon six promissory notes, aggregating $250, dated September 20, 1909, four being for $21 each, due respectively three, six, nine, and twelve months after date, and two for $84 each, due respectively two and three years after date, all payable to the order of Theodore Harris, and alleged to be owned and held by plaintiff.

Defendant admitted the execution of the notes, and alleged that he had delivered them in consideration of one share of stock of the Lotus Lodge Colony Company, hereinafter designated as the company, transferred to him by Harris. The answer is lengthy, and it is difficult to determine just what theories of defense are undertaken to be presented, but as we understand it defendant relied upon fraud and failure of consideration to defeat the notes. To show fraud, he alleged that Harris had falsely represented to him that the company owned 6,000 acres of land, unincumbered, situated in Mexico. Further on he alleged that the prospectus of the company stated that its capital stock had been exchanged for 6,000 acres of land in Mexico, and that such statement had misled him. As we understand the plea of failure of consideration, it is to the effect that the entire capital stock of the company had been transferred to Harris for 6,000 acres of land; that instead of conveying said land to the company, Harris conveyed it to McCaleb, president of the bank, to be held in trust by him to secure the payment of Harris' indebtedness to the bank, that said land, or the company's right thereto, constituted assets of the company held in lieu of its stock, and that as it did not get said land the stock was worthless. It was charged that the bank knew the notes sued on were given for stock in the company, and knew that the land was the sole asset, and that it had taken a conveyance thereof to its president to secure its indebtedness, and therefore had notice of the failure of consideration relied upon by defendant. He alleged that he had tendered the share of stock to Harris who had declined to receive it, and in his answer he formally tendered same to the bank, and prayed for cancellation of his notes.

Plaintiff's supplemental petition contained a general demurrer and special exceptions, a general denial, and a special plea that it was a bona fide holder of the notes, for a valuable consideration, and that it had obtained them before maturity in the ordinary course of business, without notice of any facts which would impeach or tend to impeach their validity as between Harris and

199 S.W.—52

defendant. The Commonwealth Bank & Trust Company, as the successor in interest of the West Texas Bank & Trust Company, was substituted as plaintiff in the cause.

The case was submitted on special issues in answer to which the jury found that the West Texas Bank & Trust Company had no notice of any fraudulent representations made to defendant, but that there was a failure of consideration for the notes, and that said bank had notice thereof at the time it acquired the notes; also that the bank applied the proceeds of the notes of the Lotus Lodge Colony members to the payment of the personal indebtedness of Harris other than that incurred in the purchase of the 6,000 acres of land, and that the money so collected was sufficient to pay the money advanced by the bank for the purchase of said land. Upon this verdict judgment was entered in favor of defendant.

The only question necessary to be considered on this appeal is whether there was a failure of consideration, and, if so, whether such defense can be urged against the bank, for on the issue of fraud the jury found against defendant, and the last two issues relate to immaterial matters. One of the witnesses testified that the stock was worthless, and the evidence warrants the finding that the entire capital stock was transferred to Harris, who in consideration thereof was to convey to the company 6,000 acres of land in Mexico. This land has never been conveyed to the corporation.

The president of the bank and the cashier testified that they did not know that the land constituted the sole asset of the corporation, and that they had no notice at the time the bank acquired the notes of any failure of the consideration therefor. The testimony of the president need not be further noticed as defendant does not rely thereon, but points to that of the cashier as sufficient to sustain the finding of the jury on the issue of notice by the bank of the failure of consideration for the notes.

The testimony of the cashier discloses that Harris who had organized the corporation known as the Lotus Lodge Colony Company, was indebted to the bank to the extent of about $8,000, and needed money to redeem a tract of land in Mexico, consisting of 6,000 acres, from a debt held against it by a bank in Mexico. He had purchased the equity of one Galan in such land, and proposed to convey the same to the company in consideration of stock in the company. An arrangement was made between him and the officials of the bank by which he was to assign to the bank notes given him for stock in the company, aggregating about $16,000, which were to be held as collateral security for his pre-existing indebtedness and such future indebtedness as he might incur to the bank; it being contemplated that advances would be made sufficient to redeem the Mexico land and pay some traveling expenses and other

expenses incident to carrying out the arrangement. On September 23, 1909, a large number of notes were so assigned, and on October 12, 1909, others, including those sued upon herein. McCaleb, the president of the bank, made a trip to Mexico, and took a deed to the land in his name, presumably from Harris, as the cashier testified Harris had previously purchased the land. The deed was taken instead of a mortgage or deed of trust in order to save expenses, and taxes incident to mortgages in Mexico, but was to serve the purpose of a mortgage to secure the payment of $15,000 due the bank by Harris. On November 2, 1909, an instrument was executed by McCaleb, as president, and Walthall, as secretary, of the bank, acknowledging that the title to the land was in Harris, and stating that McCaleb held the same in trust to secure the payment of three notes by Harris to the bank, all dated November 2, 1909, and aggregating $15,000, upon the payment of which the bank was to make title to the land to the Lotus Lodge Colony Company, or to such person or corporation as it might designate. The notes assigned corresponded in amounts and due dates to those sued on in this case. A great many of them were collected and the proceeds applied to the payment of Harris' indebtedness. The cashier of the Commonwealth Bank & Trust Company testified there was still due by Harris the sum of $7,218.95. The title to the land is still held in trust by W. F. McCaleb.

On the question of the bank's knowledge of the transactions between Harris and the company, Walthall testified:

"At the time the bank accepted these notes as collateral security to secure the indebtedness of Theodore Harris to the bank, we did not have any knowledge that the consideration for these notes had failed; we knew at that time that it had not failed, because it was part of the general plan, which was to put it where if these people paid their notes it couldn't fail—in other words, there were sufficient notes to have paid off the entire advance; if all the notes had been paid, then the obligation would have been automatically canceled by the payment of the individual collateral notes, and the title would have been transferred as we agreed to transfer it. All these collateral notes were not paid, and the Theodore Harris note was never paid. * * * I didn't know that the Lotus Lodge Colony Company's asset was the land, and that that was their sole asset, that they had nothing else, because I didn't think we got all of it. We understood that the lodge was going to purchase the land from Theodore Harris, that they had purchased the land, and that Theodore Harris gave or took their notes for his stock, and they were to utilize the money for the purpose of paying him; I believe it was $25,000; I think they were to pay him $25,000 for the land; I am not certain."

We believe this testimony supports a finding that the bank knew Harris had contracted to convey the land to the company for the stock issued to him, and that if the corporation did not get the land it would have nothing to show for the stock issued to Harris.

If the corporation received no property or money, for such stock, it naturally follows that the stock itself was not worth its face value, and in fact was only worth its proportionate part of such other assets as the corporation might have. This seems to have been recognized by Walthall, for he testified in effect that by taking $16,000 worth of notes the matter was arranged so that there could be no failure of consideration for the notes if all of the notes were paid, for in that event the land would be transferred to the corporation, and thus it would acquire the asset which would make the stock worth what the makers of the notes expected it to be worth.

[1] We conclude that, as the bank knew before and at the time it acquired the notes that the corporation would not get the land for which the stock had been issued, it was chargeable with knowledge that the value of the stock depended upon a contingency, namely, the payment of all the notes given therefor and assigned to the bank. As the bank had actual notice before it acquired the the notes sued on that the sale of the stock for which they were given had not brought to the corporation at that time any assets as the basis for such stock, it knew that the consideration for the notes had failed in part at least, and it was therefore incumbent upon it to have prosecuted that reasonable inquiry which would have led to a knowledge of all the facts, namely, that the corporation had no assets, and would never have any unless the debt of Harris was paid off. Meade v. Sandidge, 9 Tex. Civ. App. 360, 30 S. W. 245.

Appellant relies upon the case or Forster v. Enid, O. & W. Ry., 176 S. W. 788, in which it is held that a bank purchasing a note before maturity with mere knowledge that the consideration therefor was stock to be thereafter issued by a railroad corporation and the completion by it of a railroad then in course of construction is a purchaser in good faith. The court cites 3 R. C. L. p. 1067, § 273, which reads as follows:

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the indorsee of the character of a holder in due course, unless he also has notice of the breach of that agreement or contract. So knowledge of a warranty on a sale in which a note was given is held not to affect the rights of a purchaser of the note for value before maturity, if he had no knowledge of the breach of the warranty. A recital in the instrument respecting such agreement or warranty is not sufficient of itself to advise him that there was, or would necessarily be, a failure of consideration. The presumption of law would be that the contract would be carried out in good faith, and the consideration performed as stipulated. Of course if the transferee had knowledge of the breach of contract or warranty before taking the instrument, the defense may be interposed. And on the principle that several instruments made at one and the same time, and having

relation to the same subject-matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties, it has been held that an agreement made at the time of the execution of a note, forming its real consideration, and to be performed before its maturity, is a part of the same contract, and, between the original parties to the note, cannot be enforced until the agreement is performed; and that a purchaser of such note before maturity, and before the time of performance of the agreement, with notice and knowledge of its relation to the note, is bound by it the same as if it were attached to the note or written upon the same piece of paper."

This case is not one involving a breach of an executory contract subsequent to the acquisition by the bank of the notes. It is a case in which Harris, by his act in conveying the land to McCaleb, breached his contract to convey it to the company, and, as the bank knew he was selling the stock received for the land, it was bound to know that he was selling stock for which the company, up to that time, had received no assets.

[2] The assignment complaining of a remark made by the court to counsel for plaintiff is overruled for the reason that it appears to us that the testimony of the cashier of the bank above referred to shows conclusively that he had such knowledge of the facts with regard to the consideration for the notes as to prevent the bank from being a bona fide holder thereof. His conclusion that the bank had no notice cannot be held to raise an issue of fact, when he states the facts on which it is based, and such facts fail to justify the conclusion.

The judgment is affirmed.