## FARMERS' LIFE INS. CO. v. WOLTERS et al. (No. 883–4078.)

Commission of Appeals of Texas, Section B. Nov. 21, 1928.

For former opinion, see 263 S. W. 259.

Bryan, Dyess & Colgin, of Houston, and W. W. Searcy, of Brenham, for plaintiff in error.

Wolters, Storey, Blanchard & Battaile, L. A. Adamson, and Green & Boyd, all of Houston, for defendants in error.

SPEER, J. This suit was brought by plaintiff in error against J. F. Wolters and Mrs. Alma Lane, independent executor and executrix, respectively, of the will of Jonathan Lane, deceased, and against other parties not necessary to name. The purpose of the suit was to recover the title and possession of a tract of 302 acres of land, and in the alternative to recover upon a note for $10,000 executed by Jonathan Lane and to foreclose a deed of trust lien upon the land given to secure the payment of the note. The right to recover the land was predicated upon a trustee's sale under the deed of trust referred to, and this brings to the fore the real question presented by the writ of error, and that is whether or not article 5693, Vernon's Sayles' Texas Civil Statutes 1914, shortening the time within which a sale may be made under a deed of trust from ten to four years from the maturity of the debt secured, is constitutional as applied to this case. On March 1, 1912, Jonathan Lane executed the note and deed of trust in favor of the Continental Trust Company, payable one year after date. At that time the statutes provided that such sale by a trustee might be made at any time within ten years from the maturity of the debt secured. Rev. Civ. Stat. 1911, art. 5693. By amendment effective July 1, 1913 (Laws 1913, c. 123), this article was made to read:

"No power of sale conferred by any deed of trust or any mortgage on real estate heretofore executed, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby."

The trustee exercised the power and sold the land on January 1, 1918, and the plaintiff in error bought it in. The case was submitted to a jury, and upon the findings and the evidence the court rendered judgment in favor of the plaintiff against all defendants and intervener for the title and possession of the land in controversy. Upon appeal, the Court of Civil Appeals reversed and rendered the judgment in part and reversed and remanded the same in part, holding that the amended statute was constitutional, thereby denying the right of the insurance company to recover under its purchase at the trustee's sale, and that the state of the record demanded a remanding of the cause for trial between the intervener and the other appellants. 255 S. W. 666.

The Farmers' Life Insurance Company sought and obtained a writ of error, and the cause was referred to the Commission of Appeals, whose opinion was adopted wherein the reversal of the judgment of the Court of Civil Appeals and the affirming of that of the district court were recommended. 263 S. W. 259. Subsequently, the cause was withdrawn from the commission, and still later again referred to Section A of the Commission, and, upon a second recommendation being submitted, the cause was again withdrawn, and lastly referred to this section for recommendation.

By section 10, art. 1, of the Constitution of the United States, it is declared:

"No state shall * * * pass any * * * ex post facto law, or law impairing the obligation of contracts."

And section 16, art. 1, of our Bill of Rights, declares:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

These provisions are the supreme law, and control every other consideration. The limitations thus imposed are emphatic, unambiguous, and without exception. They apply

alike to *all* contracts and protect *all* obligations of such contracts from destruction or impairment by subsequent legislation.

The amendment attacked has already been quoted, and its supposed vice of course consists in its shortening the time within which the trustee under the deed of trust was authorized or permitted to make sale of the mortgaged property; the contention being that the full time allowed by law—that is, ten years—at the time the deed of trust was executed became and was an obligation of the contract and the reduction thereof as was attempted by the amendment was an impairment within the prohibition of the Constitution.

The unusual importance of the question thus presented demands that we give more than the ordinary consideration to the case, and justifies us in recounting some of the elementary considerations that enter into the decision.

First, it is important to ascertain just what is meant by the expression, "obligation of contracts." This inquiry has arisen in a great many cases, and has been answered both by way of academic definition and by illustration, but in the nature of things it will only be possible to examine a few of these cases from those courts whose decisions are most binding upon us.

"An obligation is the charge of the law, by which we are necessarily bound to make some payment, according to the law of the land. * * * The obligation of the contract consists in the power and efficacy of the law which applies to, and enforces performance of the contracts, or the payment of an equivalent for nonperformance." Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606.

The obligation of a contract is the law which binds the parties to perform their agreement. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529.

"The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning." McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397.

In the case of Sturges v. Crowninshield (4 Wheat. 200 [4 L. Ed. 529]), the late Chief Justice says:

"The distinction between the obligation of a contract, and the remedy given by the Legislature to enforce that obligation has been taken at the bar and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

This is the true principle laid down in the explicit terms. The doctrine that the remedy constitutes a part of the contract is a mere abstraction which cannot be carried into practical operation. If the doctrine be sound, it secures the means for the enforcement of the contract at its date. Now does any one doubt that a state Legislature may abolish imprisonment for debt as well on past as future contracts? Here is a modification of the remedy which takes away a means and often a principal means of enforcing the payment of the debt. And yet this is admitted by all to be a constitutional law. Nor does any one doubt the constitutionality of a statute of limitations. This operates upon contracts entered into before its enactment and bars the right of action.

"The obligation of the contract between the parties, in this case, was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions. If the defendant had made such an agreement as to authorize a sale of his property, which should be levied on by the sheriff, for such price as should be bid for it at a fair public sale on reasonable notice, it would have conferred a right on the plaintiff, which the Constitution made inviolable; and it can make no difference whether such right is conferred by the terms or law of the contract. Any subsequent law which denies, obstructs, or impairs this right, by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement, or any other mode of valuation at a public sale, affects the obligation of the contract, as much in the one case as the other, for it can be enforced only by a sale of the defendant's property, and the prevention of such sale is the denial of a right." McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397.

" 'Obligation' is defined to be 'the act of obliging or binding; that which obligates; the binding power of a vow, promise, oath or contract' etc. Webster's Dict. * * * The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest.

The ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.' Bac. Abr., Tit. Actions in General, letter B. * * * The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void. * * * Where an appropriate remedy exists for the enforcement of the contract at the time it was made, the State Legislature can not deprive the party of such a remedy, nor can the Legislature append to the right such restrictions or conditions as to render its exercise ineffectual or unavailing. State Legislatures may change existing remedies, and substitute others in their place; and, if the new remedy is not unreasonable, and will enable the party to enforce his rights without new and burdensome restrictions, the party is bound to pursue the new remedy, the rule being, that a State Legislature may regulate at pleasure the modes of proceeding in relation to past contracts as well as those made subsequent to the new regulation. * * * Mere remedy, it is agreed, may be altered, at the will of the State Legislature, if the alteration is not of a character to impair the obligation of the contract; and it is properly conceded that the alteration, though it be of the remedy, if it materially impairs the right of the party to enforce the contract, is equally within the constitutional inhibition." Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793.

"Is a contract securing to a creditor right to a specific remedy, whereby he may enforce a pecuniary obligation without resort to the courts of the country, subject to such modifications and changes as may lawfully be made in the ordinary remedies prescribed by law? We are of opinion that this should be answered in the negative. * * * That persons may contract for a remedy, lawful in itself, but not given by law for enforcement of a right, will not be questioned; but such a contract will not prevent resort to any remedy given by law. If, however, a party desires to resort to a remedy existing only by contract, he must take it in accordance with the agreement that gives it; for the Legislature has no power by subsequent law to change the contract. The exercise of such a power would be, in effect, to make contracts for parties, which the Legislature has no power to do." Loan Association v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870.

"The rule is that, while as to all causes of action not actually barred the Legislature may extend the period of limitation, yet, if rights have once become vested and perfect, the Legislature is without power to remedy or lengthen the limitation period." Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447.

"The effect of the statute upon deeds of trust executed before its enactment was considered in the case of the International Building and Loan Association v. Hardy, 86 Tex. 610 [26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870]. The deed there in question required a notice differing from that prescribed by the subsequently enacted statute; and the question was whether or not the statute so applied as to require the notice prescribed by it to be given. It would seem that both the statute and the deed could have been complied with, but it was held in effect that it was not in the power of the Legislature to take away the right of the parties created by the contract to have the property sold upon the terms and conditions and in the manner which they had agreed upon. The gist of that decision is that the parties, by their contract, had acquired the right to have the property sold by complying with the provisions of the deed; that this constituted a part of the obligation of the contract which could not be impaired by subsequent legislation, and that the imposition of additional conditions upon the exercise of the right would be such an impairment." Thompson v. Cobb, 95 Tex. 140, 65 S. W. 1090, 93 Am. St. Rep. 820.

 From these authorities and others to the same effect may be gathered and epitomized the following well-established rules: First, it is only the obligations of contract that are inviolable through subsequent legislation; second, the obligations thus protected are the reciprocal rights and remedies which the law as applied to the agreement of the parties confers upon them; third, the law existing at the time at the place of the contracting is by implication read into the contract of the parties and is as binding as though the same had been expressly stipulated in the agreement; and, lastly, the obligations of the contract are sacred whether they relate to matters of right or remedy as those terms are popularly used.

If plaintiff in error contracted with Jonathan Lane, deceased, in the deed of trust involved in this case for ten years within which to enforce payment through a trustee's sale of the property, then undoubtedly the amendment of 1913 must fall, for it clearly has impaired that obligation most materially. But we are clearly of the opinion no such right existed by the terms of the deed of trust, even when there is read into it the necessary implication above mentioned. The case most relied upon by defendants in error to show the vice in the amendment is Thompson v. Cobb, 95 Tex. 140, 65 S. W. 1090, 93 Am. St. Rep. 820. In that case one W. P. Ellison executed a deed of trust to secure James Thompson in the payment of a certain note. The instrument authorized the

sale to be made "at any time 'after default' within lawful hours." At that time there was no statute giving or in anywise regulating this remedy. A statute subsequently passed required sales under trust deeds to be made as sales under execution. The court held:

"By omitting to fix a day upon which the sale should be made and empowering the trustee to sell at any time, the parties gave him, as their common agent, a discretion to select a day when, in his judgment, the sale could be made to the best advantage of all concerned. Hess v. Dean, 66 Tex. 668, 2 S. W. 727. It was their right to have this done in accordance with their contract 'at any time' after default. The statute, if held to take away the power to make it at any other time than on the first Tuesday in the month, would not only add an additional condition, but would restrict the power defined in the deed and the consequent rights of the parties to it."

The present case differs from that one in a most important particular. In that case there was a contract obligating the parties that the land might be sold after default, in satisfaction of the debt "at any time" without any limitations whatever. There being no law to the contrary, this conferred the contractual right of the parties to a sale "at any time" the grantor might elect after default. The obligation, bear in mind, was one of express contract and not an interpretation of the implied incorporation of the law, for there was no law upon the subject to be implied. In this case the stipulation in the deed of trust is that:

"But should the said Jonathan Lane, party of the first part, make default in the punctual payment of the said indebtedness or any part thereof, principal or interest as the same shall become due and payable, or should party of the first part in any respect fail to keep and perform any one or more of the conditions herein provided to be kept and performed by said party of the first part, then and in any such case the whole amount of said indebtedness remaining unpaid shall, at the option of the party of the third part, or other holder thereof, immediately mature and become payable, and it shall thereupon or at any time thereafter, the same or any part thereof remaining unpaid, be the duty of the said party of the second part herein and of his successor or substitute as hereinafter provided, on request of the said party of the third part or other holder thereof (which request is hereby presumed) to enforce this trust and after advertising the time, place and terms of the sale * * * to sell the same in accordance with such advertisement at public auction," etc.

There is nothing in the instrument limiting the time of such sale to the ten years then allowed by statute. So that, the contract as actually expressed cannot stand as the obligation of the parties, for it is in violation of the express statute which limits the right to such sales to ten years. Under the decision in Thompson v. Cobb, supra, the language of the deed would mean, as it says, "at any time," not limited to ten years. The stipulation therefore falls, and does not furnish the guide for the rights of the parties to fix the time within which a sale might be had. This guide is supplied by the law which by implication is read into the contract precisely as though nothing had been said in the contract on the subject. This brings us to a closer consideration of the most interesting question in the case.

There is no real conflict in the authorities when rightly understood. The Legislature cannot impair the obligations of *any* contract. This is clear. Subject to this limitation, the Legislature may control, even change, *any* right incident to the contract. This is numerously illustrated in the cases upholding a change in the statutes of limitations in force at the time of the contract. Such power is inherent in the constitutional authority to legislate, and such exercise is upheld only because it *does not impair the obligations* of any contract. This is dogmatic, but inescapable. In this respect then, what is the *obligation* of the contract?

The law as it exists at the time is by implication a part of every contract, and is as binding as though expressly stated in the instrument. This much is conceded by all the authorities, and the rule applies as much to the remedy of limitations as to any other right or remedy involved. But, since the prescriptive period as it exists in the law and as thus read into the contract is not one of its obligations within the constitutional provision, there must be a reason. That reason is: The implication is the incorporation of the law as it may exist when and where its aid is invoked, and not as it existed at the time of contracting. It would not otherwise be pertinent or apt to the purposes intended. This is necessarily true, because the lawmaking power is not a party to the contract, and the presumption is, if the parties themselves had intended to make the right (or remedy if one prefers) indelible, they would have so contracted. The apparent confusion in the authorities arises in not properly construing the contract after the incorporation of the law therein by implication. The "law" thus incorporated means the will of the law-making power expressed in the usual way, touching the subject-matter of the contract, and includes ex necessitate the right of amendment. There being no contract to the contrary, there can be no obligation of contract impaired by such change. It is only upon this theory that changes in the ordinary laws of limitations are held to be not violative of the obligations of existing contracts. Many of the cases in drawing the distinction between the forbidden and the allowable amendments, speak of the matter as a remedy *supplied by the law,* and others refer to it as one for

the *courthouse*. But even by this test it cannot be denied that the right to sell through a trustee is a remedy, and in this case was one recognized and regulated by law, and in that sense supplied by the law. If it be a right, and all remedies are in a sense rights, still the Legislature undoubtedly may pass a law of limitations to the enforcement or exercise of this right, subject only to the qualification that it does not destroy or impair the right—that is, must allow a reasonable time for the enforcement in all cases. If the contract in controversy had stipulated that the holder should have ten years within which to have a sale, there would be a different question presented. So, if one were to contract specifically for the period of limitation then by law applicable to his case, we would have a different question from those numerously decided sustaining statutory abridgment of the remedy. But we need not decide this. It is only suggested by way of distinguishing. Those cases involving the right of the Legislature to change the law of limitations in cases not based on contract, such as actions to recover land, are not in point at all, and are not considered.

In its last analysis, it is a question of construction of the contract as to what obligation is implied. To hold the present act void is to hold that the contract implies, not only that the law regulating the remedy is incorporated, *but further that such law cannot be changed*, and that remedy is fixed at the time of contracting rather than the time of performance.

It must be conceded that, if the law as it existed at the time the contract was made had the effect to vest rights therein in any person, whether the immediate parties to the contract or others, such rights would immediately become inviolable. This is illustrated in those decisions involving cases where by statute a bond is required of one engaging in a public work for the protection of laborers and materialmen contributing to the work. In such a case, whether the contract and bond expressly so provide or not, the law is read into the undertaking and immediately becomes a part of it so as to inure to the benefit of those named in the statute, and thereupon, of course, their rights are immediately vested beyond impairment by subsequent legislation. But where the existing law is not of this character, but pertains to the remedy, whether in the courthouse or otherwise, it is a just and proper inference that the law as to such remedy as it may exist at the time of enforcement is the obligation of the contract. In such respect the contract embraces the law in aid of enforcement, and the state of the law at the time such aid is involved is necessarily within the contemplation of the parties, and no other law would be applicable to the needs of the parties. The general principle is illustrated by the decision in Maynard v. Hill, 125 U. S. 190, 8 S. Ct. 723, 31 L. Ed. 654, holding that legislation of a state changing property rights of the husband and wife from what they were at the time the marriage was consummated was not in violation of the constitutional provision against the impairment of contracts.

And the illustration by the marriage contract may be further employed as follows: When a man and a woman marry, the laws of the state effecting the marriage contract and status enter into the contract in the same sense that the applicable law is a part of ordinary contracts, and the Legislature cannot subsequently impair the contractual obligations. But who would think for a moment that the Legislature could not enact divorce laws, or amend existing ones, after the consummation of a marriage, applicable to marriages already contracted? Such legislation is permissible, and can only be defended upon the ground that the implication in the contract is of the law as it exists or may be thereafter amended. If the law applicable is incorporated, then all the existing law applicable is incorporated. The right of the Legislature to amend or even repeal any existing law is itself a part of the law thus incorporated in the contract.

But it does not follow that the judgment of the Court of Civil Appeals should be affirmed. On the contrary, we think it should be reversed, and the judgment of the trial court affirmed. It seems to be undisputed that on June 1, 1913, Jonathan Lane, the maker of the note in controversy, upon an agreement with the president of the Continental Trust Company, the payee and then holder of the note, in his own handwriting, wrote on the back thereof: "Time of payment of this note extended to Mch. 1st, 1914."

This, in connection with the signature on the face of the instrument, is such a signed agreement as to take the case out of the statute of frauds, unless prevented by the terms of the amendment we have already discussed. Fulshear v. Randon, 18 Tex. 277, 70 Am. Dec. 281; Newton v. Emerson, 66 Tex. 142, 18 S. W. 348; Meade v. Sandidge, 9 Tex. Civ. App. 360, 30 S. W. 245; Drury v. Young, 58 Md. 546, 42 Am. Rep. 343; Bonewell & Co. v. Jacobson, 130 Iowa, 170, 106 N. W. 614, 5 L. R. A. (N. S.) 436; Daniel on Neg. Inst. § 151.

In Watson v. First Nat. Bank (Tex. Com. App.) 285 S. W. 1050, it was held the amendment of the statutes of limitations, prescribing that renewals of liens should be in writing and duly registered, does not apply to an express agreement between the parties. It has further been held that these statutory provisions for extension of the lien are not exclusive and do not prevent any other method, which would otherwise be sufficient as

between the parties. Jolly v. Fidelity Union Trust Co. (Tex. Com. App.) 298 S. W. 530. See, also, Amonette v. Taylor (Tex. Civ. App.) 244 S. W. 238, writ refused; Russell-Coleman Oil Mill v. Johnson (Tex. Civ. App.) 287 S. W 134.

As between the parties, the lien being an incident to the debt and the debt having been by them extended, the lien was by implication of law likewise extended, and, the trustee's sale being within the time thus extended, the judgment of the trial court, permitting the recovery of the land, was proper.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.