## SHELL v. HARDIN et al.

No. 12538.

Court of Civil Appeals of Texas. Fort Worth. July 18, 1931.

Bonner, Bonner & Childress, of Wichita Falls, for plaintiff in error.

Mathis & Caldwell and T. R. Boone, all of Wichita Falls, for defendants in error.

DUNKLIN, J.·

On March 1, 1926, B. W. Owens, joined by his wife, sold and conveyed to Emory Morgan lots 1 to 8, inclusive, in block 116, in the city of Wichita Falls. The consideration for the conveyance as recited in the deed was $23,500, of which amount $3,500 was paid in cash and the balance was evidenced by four vendor's lien notes of $5,000 each, bearing interest at the rate of 7 per cent. per annum, payable respectively on or before one, two, three, and four years after date. A vendor's lien was expressly reserved in the deed to secure the payment of the notes.

On December 26, 1926, Emory Morgan conveyed the property to the Morgan Lumber Company. The consideration for that conveyance was $23,500; $3,500 in cash and the assumption of the four vendor's lien notes that Emory Morgan had theretofore executed to B. W. Owens, which notes were specifically described, with the recitation that they drew interest from date at the rate of 7 per cent. per annum. The notes were numbered 3 and 4, being those two of the vendor's lien notes which matured last and which were duly transferred and assigned by B. W. Owens to J. G. Hardin; the assignment being in writing and indorsed on the back of the notes, also including an assignment of the vendor's lien given to secure their payment and a guaranty by Owens that the same would be paid according to their tenor and effect.

The Morgan Lumber Company was indebted to the C. D. Shamburger Lumber Company and other lumber dealers in Wichita Falls, and C. D. Shamburger as a representative of those creditors entered into negotiations with Emory Morgan looking to a purchase of the buildings owned by the Morgan Lumber Company situated on the ground covered by the vendor's lien notes and office buildings, lumber sheds, and other structures used in the conduct of the business of the Morgan Lumber Company, for the purpose of liquidating the debts so owing by the Morgan Lumber Company. In order to get the consent of Hardin, the holder of the notes, to the sale of the buildings on the lots and to the removal thereof, Shamburger agreed with Hardin to guarantee the payment of the notes, and as an evidence of his agreement made this indorsement on each of the notes: "For value received, the receipt of which is hereby acknowledged, ·I hereby guarantee the payment of this note, with interest, when the same becomes due, same being extended to. August 1, 1930, and to bear 8 per cent. interest after March 1, 1930."

On August 2, 1929, Emory Morgan and Chester Morgan, composing the partnership firm of the Morgan Lumber Company, executed a bill of sale to all the sheds and office buildings owned by the Morgan Lumber Company situated on the lots described above. The consideration recited in that bill of sale was "the sum of $2,645.81 to us in hand paid by C. D. Shamburger Lumber Company, Inc., a corporation, the receipt for which is hereby acknowledged."

The bill of sale contained these further stipulations:

"It is understood that this bill of sale will not be completed and shall not be considered binding upon the parties hereto until said Emory Morgan, Chester Morgan shall have fully complied with the bulk sales law, and this bill of sale is accepted by said C. D. Shamburger Lumber Company, Inc., subject to the Morgan Lumber Company complying with the bulk sales law in every respect, it

being understood that no part of the consideration to be paid by C. D. Shamburger Lumber Company, Inc., shall be paid until this bill of sale is fully complied with and the bulk sales law is fully complied with in every particular.

"It being understood that this bill of sale duly signed by the owners of said Morgan Lumber Company shall be placed in the City National Bank of Wichita Falls, Texas, together with the full consideration to be paid by said C. D. Shamburger Lumber Company, Inc., to said Morgan Lumber Company for said sheds and office buildings, and said money and said bill of sale shall remain in said bank until the Morgan Lumber Company has fully complied with the bulk sales law, then and in that event said bill of sale shall become absolute. And we do hereby bind ourselves, our heirs, executors, administrators and assigns, to forever warrant and defend the title to the said property unto the said C. D. Shamburger Lumber Company, Inc., a corporation, its successors, executors, administrators and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"Purchaser shall have ninety days from the date of this instrument within which to remove said property above described from the premises."

The consideration so mentioned, together with the bill of sale, was placed in the City National Bank of Wichita Falls in accordance with the agreement so made.

The Morgan Lumber Company then went into bankruptcy and Temple Shell was appointed trustee in bankruptcy.

This suit was instituted by J. G. Hardin against Emory Morgan, C. D. Shamburger, the C. D. Shamburger Lumber Company, Inc., Temple Shell, the trustee in bankruptcy, and the City National Bank of Wichita Falls to recover the balance due on the two vendor's lien notes above described, and also to foreclose the vendor's lien on the lots for which those notes were given as part of the purchase money, and on the money realized from the sale of the buildings.

The defendant Emory Morgan filed a plea of non est factum, based upon allegations that without his consent the notes had been materially altered by the guaranty indorsed thereon and signed by Shamburger, which increased the rate of interest from 7 per cent. to 8 per cent. after March 1, 1930; the notes as originally executed bearing interest at the rate of 7 per cent. only. It was further alleged that such change of rate of interest had never been ratified by him, and the plea of non est factum was duly verified by Emory Morgan. C. D. Shamburger and the C. D. Shamburger Lumber Company also filed an answer in which they admitted possession of the $2,-645.80 which had been collected for itself and

other lumber companies in Wichita Falls to be paid to the Morgan Lumber Company for the improvements which had been bought and removed from the lots in controversy; that before the money was paid over to the Morgan Lumber Company the trustee in bankruptcy served notice on it that the trustee held a lien upon the lots, sheds, and other buildings which had been removed therefrom and demanded payment to him of the money so realized from the sale. In his answer C. D. Shamburger admitted the execution of the guaranty indorsed on the notes, but prayed that in the event of a judgment against him the money so derived from the sale of the improvements be first applied to the amount due on the notes and that judgment against him be limited to the balance remaining unpaid; and further that the lots upon which plaintiff claimed a vendor's lien should be first sold under foreclosure and the proceeds applied on plaintiff's debt before any execution should issue against him.

Temple Shell, trustee, adopted the plea of non est factum filed by Emory Morgan and challenged the plaintiff's right to a foreclosure of the liens prayed for, by reason of the change in the interest rate in the guaranty.

The trustee further alleged that Emory and Chester Morgan had been induced to execute the bill of sale to the C. D. Shamburger Lumber Company upon representations made by C. D. Shamburger of the following facts:

Shamburger proposed a purchase from Morgan of the improvements on the lots for and in behalf of the Shamburger Lumber Company and several other lumber companies in the same city who were creditors of the Morgan Lumber Company; the Morgan Lumber Company being then unable to pay those debts. Morgan consented to make the sale for a consideration of $4,150, which offer was accepted by Shamburger for and in behalf of himself and the other creditors, and at the same time Shamburger promised to procure subscriptions from the several creditors of the respective amounts they would contribute towards the raising of the price of $4,150 agreed on. Thereafter Shamburger reported that the full price named had been subscribed by the various creditors and had been paid in to Shamburger for the benefit of the Morgan Lumber Company; that relying upon that assurance, Emory Morgan and Chester Morgan executed the bill of sale to the Shamburger Lumber Company, but would not have done so but for the representations so made by Shamburger that the full sum of $4,150 had been paid for the improvements and was then held by Shamburger as a trust fund for the Morgan Lumber Company; that the bill of sale was executed, relying upon those representations and believing that Shamburger then held and had on hand as trustee the full sum of $4,150.

Based upon an allegation of those facts, Temple Shell, the trustee, prayed for a recovery over against C. D. Shamburger Lumber Company for the sum of $1,402.20, the balance of the $4,150, the agreed price for the improvements over and above the $2,645 deposited by Shamburger in the bank.

There was a further prayer for judgment for the sum of $1,300, which the evidence showed was realized from a sale of the buildings by Shamburger after he had bought them from the Morgan Lumber Company.

The bank was discharged on its disclaimer, and judgment was rendered in favor of the plaintiff for the balance due on, the notes against Emory Morgan and C. D. Shamburger and for a foreclosure of the vendor's lien on the lots in controversy, and on the money held by Shamburger as the proceeds of the sale of the buildings as against all the defendants, with a further decree that the amount so realized from the sale of the buildings should be first applied to the judgment and before the sale of the lots, and that the lots be sold under foreclosure for the payment of the balance. From that judgment Temple Shell, the trustee, has prosecuted this appeal.

The principal contention presented by appellant is that the acceptance by the plaintiff of the guaranty of Shamburger indorsed on the back of the notes, increasing the rate of interest from 7 per cent. to 8 per cent. from and after the date stated, was a material alteration in the notes which rendered them unenforceable against the maker, Emory Morgan, and that therefore there could be no foreclosure of the vendor's lien in plaintiff's suit which is based on those notes. Many authorities are cited in support of that contention, such as article 5939, § 125, Rev. Civ. Statutes; Kalteyer v. Mitchell (Tex. Civ. App.) 110 S. W. 462; Id., 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889; Baldwin v. Haskell Natl. Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178; Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56; Caldwell Natl. Bank v. Reep (Tex. Civ. App.) 188 S. W. 507 (writ refused); Meade v. Sandidge, 9 Tex. Civ. App. 360, 30 S. W. 245 (writ refused); State Bank v. Williams (Tex. Civ. App.) 277 S. W. 773; Commercial Credit Co. v. Giles (Tex. Civ. App.) 207 S. W. 596; Metropolitan National Bank v. Vanderpool (Tex. Civ. App.) 192 S. W. 589; Citizens' Natl. Bank v. Campbell (Tex. Civ. App.) 6 S.W.(2d) 799; Clifton Mercantile Co. v. Gillaspie (Tex. Com. App.) 15 S.W.(2d) 607; 2 Corpus Juris, 1173.

There is no doubt that under those authorities an unauthorized change of interest rate of a promissory note would be a material change which would invalidate the note as against the maker if the same was made without his authority or consent or ratification. But the controlling inquiry in this suit is whether or not the contract of the maker with the payee of the notes has been changed or altered by the guaranty indorsed thereon. It will be noted that the guaranty contract of Shamburger was with the holder of the notes and to which Emory Morgan did not in any sense become a party. And it cannot be said that he was bound thereby, or that his contract to pay the notes was in any manner altered or changed. His contract remained the same, and the guaranty of Shamburger had no more effect to change or alter that contract by reason of it being indorsed on the notes than would have resulted if the guaranty had been made by a separate instrument of writing.

The facts involved in this case are different from those in the decisions cited above, which, therefore, are not controlling here. And we have reached the conclusion that the guaranty indorsed upon, the notes in controversy was not a material alteration or change in the obligation of the maker to pay them according to their legal tenor and effect, and therefore the assignments of error now under discussion are overruled.

We believe that the following authorities sustain this conclusion: Hutches v. J. I. Case Threshing Machine Co. (Tex. Civ. App.) 35 S. W. 60 (writ refused); Clem v. Chapman (Tex. Civ. App.) 262 S. W. 168 (writ refused); Strehlow v. Planinger, 198 Wis. 525, 224 N. W. 742; Reed v. Culp, 63 Kan. 595, 66 P. 616; Joyce on Defenses to Commercial Paper, vol. 1, p. 385, § 311; 2 Corpus Juris, 1213.

The following is quoted from Joyce on Defenses to Commercial Paper, cited above: "The fact that the name of another is affixed to an instrument as surety subsequent to the signing of the same by the maker, a principal debtor, will not, it is held, release the latter from liability, as it does not increase or diminish his liability, he being liable for the whole debt in any event. So where the name of a guarantor is added it has been declared that it 'is not a material alteration and does not release those primarily bound. It does not in any way change or affect their rights. It is an independent contract made with a third party, to which the consent of the obligors is unnecessary. Their liability is neither increased nor diminished by the addition of the name of the guarantor, and he has no right of contribution or exoneration. The rights of the obligors are no more affected by the guaranty placed on the note than they would be by a guaranty placed on a separate instrument.' And the addition of a name as surety, subsequent to the signing by the original surety, has been construed as an immaterial alteration, so far as the liability of the latter is affected. So it has been said that such a signing for a new consideration constitutes a new and independent contract to which the consent of the original promisor is not required."

996

■ Two other propositions in appellant's brief read as follows:

"(3) The trial court erred in rendering judgment for defendant in error, J. G. Hardin, for the sum of $2,645.00, because the uncontradicted evidence shows that the fund was not deposited by Shamburger et al. in escrow in the bank as the purchase price of the lumber sheds removed from the mortgaged premises, but only for the privilege of demolishing them and thus disabling Morgan Lumber Company from further engaging in the lumber business in the City of Wichita Falls in accordance with a price agreement between Shamburger, Shamburger Company, Morgan Company and other lumber dealers."

"(4) The trial court erred in refusing to render judgment for plaintiff in error against defendants in error, Shamburger and Shamburger Company, for the sum of $4,150.00, because the uncontradicted evidence shows that said sum was subscribed by various lumber dealers to be paid to said defendants in error for the benefit of plaintiffs in error, all of which sum was to be subscribed and paid before any of the lumber sheds were demolished, and they became personally liable for the $1,402.00 remaining unpaid as the balance of the $4,150.00 agreed upon."

We believe that the testimony introduced in connection with the bill of sale was sufficient, to say the least, to sustain the implied finding by the trial court that the transaction between the Morgan Lumber Company and the Shamburger Lumber Company, relative to the buildings on the lots, was an unconditional bona fide sale of those buildings to the latter company, and that the $2,645, now held by C. D. Shamburger, as trustee, and which was subjected to plaintiff's debt by the judgment rendered, was the full consideration agreed on, after crediting thereon the debts owing by the Morgan Lumber Company to the Shamburger Lumber Company and its associates who distributed the cash paid. Accordingly, both the assignments last referred to are overruled.

For the reasons stated, all assignments of error are overruled, and the judgment is affirmed.