

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Everett W. Wilson, D.O.
Texas State Board of Medical Examiners
1114-1115 Medical Arts Building
San Antonio, Texas

Dear Sir:

Opinion No. 0-1586
Re: Where an applicant for license presents
a diploma which he was granted several
years ago, and credentials which, at time
of his graduation, qualified him to take
the examination, but without credit for
60 semester hours of non-medical college
courses, does present law act retroac-
tively to prevent such a person from ap-
plying for admission to medical examin-
ations or whether provisions of law al-
low such a person to now take the exam-
inations. And related questions.

We are in receipt of the requests of the Texas
State Board of Medical Examiners for an opinion on the
following three questions:

(1). "We wish to present for consideration
an example where an applicant for license pre-
sents a diploma which he was granted several
years ago, and credentials which, at the time of
his graduation, qualified him to take the exam-
inations, but without credit for sixty (60)
semester hours of non-medical college courses.

"We wish to now ask whether the present
law acts retroactively to prevent such a person
from applying for admission to medical examina-
tions or whether the provisions of the law al-
low such a person to now take the examinations."

(2). "A foreign State, of the United States,
from which we have applicants for licenses, has

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

a board of medical examiners for each of the
several, separate schools of medicine, which
boards examine in the same fundamental subjects
and which grant licenses for such respective
schools of medicine all of which licenses allow
identical privileges as to scope of practice.
This differs from the 'composite' type of board,
as in Texas, where the Board is composed of
practitioners of all of the recognized schools
of medicine and which grants licenses, identi-
cal in all respects, to practitioners in all of
the recognized schools of practice.

"Would it not be in violation of Article
Sixteen (16), Section thirty one (31) of the
Texas Constitution, providing:

"'The Legislature may pass laws pre-
scribing the qualifications of practice
of medicine in this State, and to punish
persons for mal-practice, but no prefer-
ence shall ever be given by law to any
schools of medicine.',

and in violation of Article 4504, R.C.S.,(1925),
as amended 1939 in House Bill #148 which opens
with this declaration:

"'Nothing in this Chapter shall be so
construed as to discriminate against
any particular school or system of medi-
cal practice, * * * '

for the Texas Board of Medical Examiners to
grant a license by reciprocity to a licensee of
one of such boards of such foreign state and to
deny to a licensee of another of such boards of
that same state a license by reciprocity."

(3). "An applicant for a license to prac-
tice medicine in Texas presents a license grant-
ed by another State which reads 'To Practice
Osteopathy', which applicant has secured such
license by examination in fundamental subjects,
as required by Texas law for admission by ex-

Everett W. Wilson, D.O., Page 3

amination in Texas, and which applicant enjoyed, in the foreign state, the same unlimited privileges and scope of practice as are enjoyed by practitioners in Texas.

"Should not the Texas Board of Medical Examiners follow the opinion of the Attorney General of Texas numbered O-1898, issued September 8th, 1939, and to grant, by reciprocity, such applicant a license to practice medicine in Texas."

Article 4501, as amended, Vernon's Annotated Civil Statutes, provides:

"All applicants for license to practice medicine in this State not otherwise licensed under the provisions of law must successfully pass an examination by the Board of Medical Examiners. The Board is authorized to adopt and enforce rules of procedure not inconsistent with the statutory requirements. Applicants to be eligible for examination must be citizens of the United States and must present satisfactory evidence to the Board that they are more than twenty-one (21) years of age, of good moral character, who have completed sixty (60) semester hours of college courses, other than in a medical school, which courses would be acceptable, at time of completing same, to the University of Texas for credit on a Bachelor of Arts Degree or a Bachelor of Science Degree, and who are graduates of bona fide reputable medical schools; a reputable medical school shall maintain a course of instruction of not less than four (4) terms of eight (8) months each; shall give a course of instruction in the fundamental subjects named in Article 4503 of the Revised Civil Statutes of Texas of 1925, as amended by this Act; and shall have the necessary teaching force, and possess and utilize laboratories, equipment, and facilities for proper instruction in all of said subjects. Applications for examination must be made in writing verified by affidavit, and filed with the Secretary of the Board on forms prescribed by the Board, accompan-

Everett W. Wilson, D.O. page 4

ied by a fee of Twenty-five Dollars ($25). All applicants shall be given due notice of the date and place of such examination. Provided further that all students regularly enrolled in medical schools whose graduates are now permitted to take the medical examination now prescribed by law in this State shall upon completion of their medical college courses be permitted to take the examination prescribed herein."
(Underscoring ours).

The requirement of sixty (60) completed semester hours of college work, other than in a medical school, which courses would be acceptable, at time of completing same, to the University of Texas for credit on a Bachelor of Arts Degree or a Bachelor of Science Degree, became a part of the above quoted statute in 1939 by Act of the Forty-sixth Legislature, House Bill No. 148, Section 5.

The proviso to the amended statute exempts students in medical schools whose graduates were eligible for the State Medical Examination prior to the effective date of the amendment. Opinion No. 0-1897 of this department to the Texas State Board of Medical Examiners. San Antonio, Texas, by Hon. Ardell Williams, Assistant Attorney General. It is to be noted that this opinion is restricted to the status of students enrolled in medical school at the time the statute was amended.

As to the status of graduates of the same medical schools who had received their diplomas prior to the adoption of the sixty (60) complete semester college hours requirement, we are confronted with a question of statutory interpretation, and find it necessary to apply the established canons of statutory construction to the law before us.

The proviso of Article 4501, supra, is not free of ambiguity and is susceptible of two constructions.

The words "all students regularly enrolled in medical schools" might mean only those students enrolled in medical schools at the time of the amendment of the law to include the sixty (60) semester hours of college courses requirement, or again it might mean all students who have been enrolled in such medical schools whether prior to the amendment or at the time of its enactment.

Everett W. Wilson, D.O. page 5

The phrase "whose graduates are now permitted to take the medical examination now prescribed by law in this state" describes and qualifies "medical schools." It is to be noted that the proviso does not limit itself to students "now" enrolled in medical schools.

Under a liberal construction the proviso will not be given the effect of excluding graduates of the medical schools described from taking the examination because they have not had sixty (60) hours of college work. If they have been regularly enrolled, and have completed their courses, and received a diploma, they are and should be entitled to the same privilege of taking the examination as the regularly enrolled students at the time of the amendment who have not completed their medical school course. From the language of the Act we cannot discern an intention of the Legislature to discriminate between graduates and students of medical schools "whose graduates are now permitted to take the medical examination now prescribed by law". It seems to us that both classes of students - those who have been enrolled but have graduated and those enrolled at time of amendment to statute - fall within the permissive scope of the law.

A contrary construction threatens the constitutionality of the law on the theory that it would confer special privileges upon one group of graduates and amount to an arbitrary and unfair discrimination against another group of graduates which was entitled to take the examination at the time of graduation but who were subsequently barred by a failure to be exempted from a course requirement made subsequent to their graduation.

Two cardinal rules of construction are controlling in this situation. First, the courts will always endeavor to interpret a statute so that it will be constitutional and valid, and will decline to adopt a construction that will destroy or nullify it, if by any reasonable construction the enactment can be sustained.

GREENE v. ROBINSON, 8 S.W. (2d) 655;
SLOCUMB v. CAMERON INDEPENDENT SCHOOL DIST. 288 S.W. 1064;
CATHEY v. WEAVER, 242 S.W. 447.

Everett W. Wilson, D.O. page 6


Secondly, when the language of a statute is not clear, and the act is susceptible of different constructions, it will not be construed so as to operate harshly, unjustly, or discriminatorily. That construction will be adopted which is based on the assumption that the Legislature intended to enact a fair, just and reasonable law.


ORIENTAL HOTEL CO. v. GRIFFITHS, 33 S.W. 652;
ENGEL KING v. VON WAMEL, 26 Tex. 469;
STATE v. DELESCENIER, 7 Tex. 469;
DAVIS v. PAYNE, 179 S.W. 60.


Since Article 4501, supra, is susceptible of a reasonable construction which would place graduates and students of medical schools on an equal basis, we reject a construction which raises constitutional doubts. If students enrolled in medical schools at the time the Legislature placed the sixty (60) semester college hours requirement in Article 4501, supra, are excepted from meeting the requirement by all the rules of logic and principles of equity, students who had graduated prior to the amendment and were in every way qualified to take examinations at the time of graduation should not be adversely affected and barred from taking the examination because they did not have sixty (60) semester college hours work.


In answer to your first question, it is our opinion that under Article 4501, as amended Vernon's Annotated Civil Statutes, an applicant for admission for the state medical examinations and for a license who had acquired his medical school diploma qualifying him to take the state medical examinations prior to the amendment of article 4501 in 1939 to include the requirement of "sixty (60)

Everett W. Wilson, D.O., page 7

semester hours of non-medical college courses," is not subject to this provision of the amended article and has a right to take the examinations despite the fact that he does not have to his credit sixty (60) semester hours of non-medical college courses.

Article 4500, as amended, Vernon's Annotated Civil Statutes, provides for "reciprocal arrangement" as follows:

"The State Board of Medical Examiners may, in its discretion, upon payment by an applicant of a fee of Fifty Dollars ($50), grant license to practice medicine to any reputable physician who is a citizen of the United States, and a graduate of a reputable medical college, or who has qualified on examination for a certificate of medical qualification for a commission in the Medical Corps of the United States Army or Navy, and to licentiates of other States or Territories having requirements for medical registration and practice equal to those established by the laws of this State. Applications for license under the provisions of this Article shall be in writing and upon a form to be prescribed by the State Board of Medical Examiners. Said application shall be accompanied by a diploma, or a photograph thereof, awarded to the applicant by a reputable medical college, and, in the case of an Army or Naval officer, a certified transcript or a certificate , or license, or commission issued to the applicant by the Medical Corps of the United States Army or Navy, or by a license, or a certified copy of license to practice medicine, lawfully issued to the applicant, upon examination, by some other State or Territory of the United States. Said application shall also be accompanied by an affidavit made by an executive officer of the Medical Corps of the United States Army or Navy, the President or Secretary of the Board of Medical Examiners which issued the said license, or by a legally consti-tuted medical registration officer of the State or Territory by which the certificate or license was granted, and on which the application for medical registration in Texas is based, reciting

Everett W. Wilson, D.O., page 8

that the accompanying certificate or license
has not been canceled or revoked, except by
honorable discharge from the Medical Corps of
the United States Army or Navy, and that the
statement of the qualifications made in the appli-
cation for medical license in Texas is true and
correct. Applicants for license under the pro-
visions of this Article shall subscribe to an
oath in writing before an officer authorized by
law to administer oaths, which shall be a part
of said application, stating that the license,
certificate, or authority under which the appli-
cant practiced medicine in the State or Territory
from which the applicant removed, was at the
time of such removal in full force, and not sus-
pended or canceled. Said application shall also
state that the applicant is the identical person
to whom the said certificate, license, or com-
mission, and the said medical diploma were issued,
and that no proceeding has been instituted
against the applicant for the cancellation of
said certificate, license, or authority to prac-
tice medicine in the State or Territory by which
the same was issued; and that no prosecution is
pending against the applicant in any State or
Federal court for any offense which under the
law of Texas is a felony. A reputable physician
within the meaning of this Article shall be one
who would be eligible for examination by the Board
of Medical Examiners under the provisions or Ar-
ticle 4505 of the Revised Civil Statutes of Texas
of 1925, as amended by this Act. A reputable
medical college within the meaning of this Arti-
cle shall be such as is defined in Article 4501
of the Revised Civil Statutes of Texas of 1925,
as amended by this Act. It is provided, however,
that the Board may, under the provisions of this
Article, in its discretion, grant license to any
reputable physician of another State, Territory,
or District, who graduated prior to the year 1907
from a medical college which at the time of his
graduation required only three (3) courses of in-
struction of not less than six (6) months each
for attainment of its diploma, or the degree of
Doctor of Medicine, and which at the time of his
graduation was generally recognized by the medical

Everett W. Wilson, D.O., page 9

examining boards of the States of the Union as
maintaining entrance requirements and courses
of instruction equal to those maintained by the
then better class of medical schools of the
United States; and provided further that the
said applicant for license to practice medicine
in this State shall appear before the Board in
executive session and pass a satisfactory oral
examination in practical subjects as may be pre-
scribed by the Board. The said Board shall not,
under the provision of this Article, grant a
license to practice medicine in this State to
an applicant who does not hold a license issued
by another State, Territory, or District of the
United States, giving to him the same right to
practice medicine in the State, Territory, or
District issuing said license which a license
to practice medicine in this State gives to a
physician of this State in Texas. As amended
Acts 1939, Forty-sixth Legislature, House Bill
No. 148, § 1." (Underscoring ours).

Article 4504, as amended, Vernon's Annotated Civil
Statutes, relating to "construction of this law", reads
in part:

"Nothing in this Chapter shall be so con-
strued as to discriminate against any particular
School or system of medical practice, nor to af-
fect or limit in any way the application or use
of the principles, tenets, or teachings of any
church in the ministration to the sick or suf-
fering by prayer, without the use of any drug or
material remedy, provided sanitary and quarantine
laws and regulations are complied with; and pro-
vided, further, that all those so ministering or
offering to minister to the sick or suffering
by prayer shall refrain from maintaining offices,
except for the purpose of exercising the princi-
ples, tenets, or teachings of the church of which
they are bona fide members. * * * "

Article 16, Section 31 of the Texas Constitution
provides, in part, as follows:

"The Legislature may pass laws prescribing

Everett W. Wilson, D.O., page 10

the qualifications of practitioners of medicine
in this State, and to punish persons for mal-
practice, but no preference shall ever be given
by law to any schools of medicine."

Reviewing Article 4500, supra, it provides that
the State Board of Medical Examiners "may, in its dis-
cretion, * * * grant license to practice medicine * * *
to licentiates of other States or Territories having
requirements for medical registration and practice equal
to those established by the laws of this State".

Application must be accompanied in the case of
"licentiates of other States" by a license, or a certi-
fied copy of license to practice medicine, lawfully issu-
ed to the applicant, upon examination by some other State
or Territory of the United States.

There are additional requirements w.ich need not
be discussed here. A primary condition is contained in
the final sentence of Article 4500, supra:

"The said Board shall not, under the provi-
sion of this Article, grant a license to prac-
tice medicine in this State to an applicant who
does not hold a license issued by another State,
Territory, or District of the United States,
giving to him the same right to practice medi-
cine in the State, Territory, or District issu-
ing said license which a license to practice
medicine in this State gives to a physician of
this State in Texas."

The present situation is one involving the appli-
cation of the reciprocity statute, Article 4500, supra,
The language of this statute is clear and explicit as to
the authority of the State Board of Medical Examiners
over the applications of licentiates of other States or
Territories.

It is our opinion that under Article 4500, as
amended, Vernon's Annotated Civil Statutes, the medical
reciprocity act, the Texas State Board of Medical Examin-
ers has the authority to use its discretion in granting
licenses to practice medicine to licentiates of other

Everett W. Wilson, D.O., page 11

states and that it may legally reject the application of a licensed practitioner of medicine in another state, whether in that state a "composite" type of Board such as exists in Texas or separate Boards for the different fields of medicine issued the license of the out of state applicants, whenever the Texas Board of Medical Examiners is satisfied that the requirements under which the licentiate in the sister state obtained his license are requirements for medical registration and practice which do not equal those established by the laws of this state. Such action on the part of the Board, pursuant to the terms of Article 4500, does not violate the provisions of Article XVI, Section 50 of the Texas Constitution in respect to "schools of medicine" and Article 4504, as amended, in respect to discrimination against any particular school or system of medical practice.

In answer to your third question, this department has held that the practice of osteopathy is within the phrase "the practice of medicine". Opinion No. 0-1296 to the Texas State Board of Medical Examiners, by Hon. William J. Fanning, Assistant Attorney General.

Article 4510, R.C.S. of 1925, provides:

"Any person shall be regarded as practicing medicine within the meaning of this law:

1. Who shall publicly profess to be a physician or surgeon and shall treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof;

2. Or who shall treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method, or to effect cures thereof and charge therefor directly or indirectly, money or other compensation."

Article 4500, as amended, Vernon's Annotated Civil Statutes, provides that the State Board may in its discretion grant a license to practice medicine "to licentiates of other States or Territories having requirements for

medical registration and practice equal to those established by the laws of this State," upon compliance by the licentiates with certain requirements set out in the statute.

In passing upon the application of a licensee of a sister state, the State Board of Medical Examiners must determine whether or not these requirements have been met: first, that the prerequisites of medical registration and practice of the sister state are in conformity with the standards established by the law of Texas; second, that the extent of the right to practice medicine which the license of the sister state confers is co-equal with the privileges and scope of practice conferred by the Texas license, irrespective of the nature of the license, its wording or the type of Board which issues it.

Where an applicant for a license to practice medicine in Texas presents a license granted by another state which reads "to practice osteopathy", the application is within the jurisdiction of the State Board of Medical Examiners and the Board has authority to consider the application under the Medical Reciprocity Statutes, Article 4500, as amended, Vernon's Annotated Civil Statutes. Where the applicant has secured his sister state license by fulfilling requirements for medical registration and practice equal to those established by the laws of this state, as provided in Article 4500, and has met the other requirements of Article 4500 applicable to an out of state licentiate applying for a Texas license it is within the discretion of the State Board of Medical Examiners to grant said applicant a license to practice medicine in Texas.

Trusting that the above fully answers the inquiries contained in your three letters, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Dick Stout
                  Assistant

DS:ob

APPROVED NOV 24, 1939

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN